[No. 1481.  Filed January 12, 1895.]

EUGENE B. HYDE ET AL., *Respondents*, *v.* ALBERT HEL-
LER ET AL., *Appellants.*

VENDOR AND PURCHASER—DEATH OF VENDOR—POWER OF EXECU-
TOR TO MAKE DEED—ACTION TO RESCIND—VENDEE'S LIEN—
TENDER—EVIDENCE.

On the rescission by a purchaser of a contract for the sale of land
on the ground that the interest of heirs therein cannot be reached
and disposed of, the purchaser is not entitled to a vendee's lien
against the land to secure the refunding of money paid on the con-
tract.

Under the statutes of this state the legal title to land of a decedent
vests in his executor or administrator for the purpose of passing
title to purchasers under a contract for its sale made by the decedent,
and the rights of devisees or heirs in the land is confined to an inter-
est in the purchase money due under the contract.

A finding by the court that purchasers of certain land had not
entered into possession is unwarranted, when there is little testimony
upon the subject and the contract of sale itself provides that the
vendor shall have the right to re-enter and take possession in case of
forfeiture, the plain intent appearing therefrom that the possession
should be given by the execution and delivery of the contract of
sale.

A tender of the balance of the purchase price due upon a contract
for the sale of land made by a purchaser to his vendor's executor,
does not constitute a valid tender when the purchaser is doubtful of
the ability of the executor to convey a valid title, and has no inten-
tion of paying over the money until he can get an opinion from his
attorney upon the validity of the conveyance.

A vendor is not bound to execute a deed to a purchaser under a
contract for the sale of land upon the tender of the full purchase
price, when the purchaser has failed to pay taxes upon the land in
accordance with one of the conditions of the contract.

The fact that a tender of the purchase price of land is made to an
executor before he has qualified as a representative of the vendor's
estate, does not impose the duty upon the executor of executing a
deed after his qualification, when the tender is not kept good by the
purchaser, especially where the time of the execution of the deed is
not made of the essence of the contract.

Where a complaint for the rescission of a contract for the sale of

land alleges that the complainants are willing to complete the contract, if the court finds a good, marketable title could be made to them, an answer by the defendants offering to make a deed either by the executor or by a commissioner, as the court shall decree, constitutes a sufficient tender of a deed, under the issue as made by the complaint.

*Appeal from Superior Court, Spokane County.*

*Blake & Post*, for appellants.

*Turner, Graves & McKinstry, Samuel C. Hyde* and *Lucius G. Nash*, for respondents.

The opinion of the court was delivered by

DUNBAR, C. J.—This was an action brought by the respondents, Eugene B. Hyde and George H. Leonard, against Albert Heller, the heirs and devisees of Caroline Heller, deceased, and against the executors of her last will and testament. The complaint alleges that on September 1, 1889, Hyde entered into a contract with Caroline Heller and the defendant Albert Heller, who were then husband and wife, for the purchase of certain lots in the city of Spokane, for the consideration of $60,000, to be paid, $10,000 down, $15,-000 on or before one year, $15,000 on or before two years, and $20,000 on or before three years, from the date of the contract; the deferred payments to bear interest at the rate of ten per cent. per annum, payable semi-annually. He was also to pay all street grade assessments and taxes then a lien upon the premises, as well as all such taxes and assessments as might afterward be levied thereon. It is alleged that the plaintiff, Leonard, and one Herbert Bolster each had an interest with the plaintiff, Hyde, in said contract, Leonard having one-sixth interest and Bolster having one-third interest therein, which facts are alleged to have been known to Albert and Caroline Heller. Before the bringing of this action Bolster sold and assigned his interest in the contract to the plaintiff, Leonard. It is further alleged that Caroline Heller, after the excution of the contract in question, to-wit, on March 17, 1892, made and executed her last

will, a copy of which is set up in the complaint and which is as follows :

"I, Caroline Heller, wife of Albert Heller, now 63 years of age, and residing in the city of Spokane, state of Washington, and being of sound and disposing mind and memory, and being mindful of the uncertainty of life and the certainty of death—do make, publish and declare this my last will and testament, to-wit :

"FIRST.  I give, bequeath and devise to my husband, Albert Heller, one-third of all my estate both real and personal.

"SECOND.  I have four children, namely, Bertha Foorman, wife of Solmon Foorman, now residing in Bishop Creek, state of California, Samuel Heller, whose home is with me, August Heller, now in Calispell, Montana, and Fannie Heller, whose home and abode is now with me, and I give and bequeath all of the remainder and residue of my said estate, (i. e. ⅔) to the above mentioned four children, my heirs, in equal proportions, share and share alike—excepting the proportion (¼) of the residue of my said estate, instead of vesting in my daughter, Mrs. Bertha Foorman, I desire and so will that her portion vest in my said husband Albert Heller, as trustee for her benefit, and that she shall only have the use of her portion during her life time, and at her death to vest in her children.  The portion allotted to her to be under the management of my husband.  The other three children to have their said portions in their own right immediately after my demise.

"I further order, desire and will—that upon my death all of my said estate at once vest in my said heirs and my said husband.  That no steps to be taken in court whatever except to prove this my will, and that then all proceedings in court shall cease and that all my property at once vest in the parties mentioned in this will according to the bequest and promises herein contained.

"I appoint my husband, Albert Heller, as executor (and trustee) and my daughter Fannie Heller, executrix of this my last will and testament, and desire and will that no bonds be required of either of them for the discharge of their duties.

"In witness thereof I, Caroline Heller, have to this my last will and testament, consisting of one sheet of paper, written on both sides, subscribed my name and set my seal this 17th day of March, A. D. 1892.

 (SEAL)                          "CAROLINE HELLER."
Properly witnessed.

The complaint alleges that on March 8, 1893, Caroline Heller died ; on April 26, 1893, her said will was probated in the superior court of Spokane county, and thereupon the said Albert Heller and Fannie Heller entered upon the discharge of their duties as executor and executrix respectively of said will, and have continued to execute the trust devolved upon them, etc.   Also alleges the names of the children of the defendant, Bertha Foorman, and that they are minors and that the property in question was either the community property of Albert Heller and Caroline Heller, or the separate property of Caroline Heller.   And the various payments on the contract were set forth, it appearing that in addition to the $10,000 paid down, the $15,000 payment was made at the expiration of the first year.   No other payments have been made upon the principal, the rest of the payments mentioned in the complaint being payments of interest.   The complaint alleges that on April 12, 1893, plaintiff tendered Albert Heller and Fanny Heller, executor and executrix, at the Traders National Bank, at which place the contract was payable, $37,174.30, the alleged balance due upon the contract ; which tender was refused.   The executors, according to the complaint, alleged the confusion of title caused by said will, but insisted that they could and would at some time in the near future obviate the difficulties standing in the way of making such title, and would then make, or cause and procure to be made, a good marketable title to said property.   The complaint also alleges that at the time of the tender plaintiffs did not know of the provisions of the will or of the alleged difficulties in the way of making a good title, and supposed and believed that it was within the power of the executors to cause and procure a good title to be made, but they have since learned that it was impossible for the devisees to make a good title to the property.   Alleges further that time was of the essence of the contract, so far as the execution of the deed was concerned.

The prayer of the complaint is for a rescission and cancellation of the contract ; for judgment against the defendants for the amount of money paid thereon by plaintiffs, together with ten per cent. interest per annum ; that a vendee's lien

be declared and established in favor of plaintiffs for the purchase money so paid as aforesaid : " that if the court shall be of the opinion that the plaintiffs are not entitled to the relief herein prayed for, or any part thereof, or are not entitled to rescind said contract, that then, and in that event, the court shall make such decree as shall preserve and establish the rights of these plaintiffs, and of the defendants respectively, in and to said real estate and all matters and things pertaining to this litigation, and that the court shall grant such other and further relief to these plaintiffs as shall seem meet and equitable."

The infant defendants were served with summons by publication ; proof having been made of such service, a guardian *ad litem* was appointed for them.

There are three answers : The answer of the executors, Albert Heller and Fanny Heller; the answer of the adult defendants, Albert Heller, Bertha Foorman, Samuel Heller, August Heller and Fannie Heller ; and the answer of the guardian *ad litem* of the infants. These answers generally admit most of the facts alleged in the complaint, but deny that time was of the essence of the contract in any particular except as to the payments of the deferred purchase money ; denied that any of such payments could be made to the Traders National Bank, or that there were any impossibilities, difficulties or trouble in the way of making a good and marketable title to plaintiffs ; denied that plaintiffs were never let into possession of the property, and denied that any tender was ever made to the defendants, Albert Heller and Fanny Heller, or either of them, of the balance of the purchase money. It is also claimed in the answer that the purchase price was $63,000 instead of $60,000, the first payment of $13,000 instead of $10,000, and that letters testamentary were issued to the executors on May 19, 1893. The answer of the defendants other than the executors contained the following :

" And said defendants now offer and tender the plaintiffs and the court their consent that the executor and executrix of the last will and testament of said Caroline Heller,

deceased, may execute and deliver to the plaintiffs such deed
or deeds of conveyance as may be necessary to convey· to
them a good indefeasible and marketable title in said real
estate ; or that a commissioner may be appointed by the
court for the purpose, or if the court shall so order and direct,
they offer to execute such deed or deeds in their own proper
persons, to said plaintiffs.''

The executors' answer and counter-claim as to the amount
corresponds with the other answers.   It also alleges that
upon the execution of the contract plaintiff Hyde took pos-
session of the property and has ever since remained in posses-
sion thereof.   The allegations in regard to payments are sub-
stantially like those of the complaint.   It also alleges that
at the time of the execution of the contract in question Car-
oline Heller was the owner in fee of the real estate in ques-
tion, and the following allegation appears :

"That they have always been ready, able and willing
to convey the property to the plaintiffs upon the payment
of the balance of the purchase money, and now offer and
tender the plaintiffs and the court the performance of said
contract, by making and executing such deed or deeds of
conveyance of said real estate to the plaintiffs as the court
may order or direct; and they further offer and tender to the
plaintiffs their consent to the appointment of a commissioner
to make and execute such deeds of conveyance as may be
necessary in the premises, fully submitting themselves
to abide by and perform such orders of the court as may be nec-
essary to make to the plaintiffs a good marketable title  to
said real estate.''

And they further allege that there are no difficulties in
the· way of making a good title to the plaintiffs, and that
they hold, and are entitled to, a vendor's lien on the prop-
erty for the balance of the purchase money due upon the con-
tract; and pray accordingly.

Plaintiff's reply to the affirmative answer and counter-
claim of the executors was ·a general denial.   Upon these
issues the case went to trial, and the court found that the
complaint was sufficient to state a cause of action for a rescis-
sion of the contract; that the plaintiffs were entitled to a
rescission of the contract; and judgment of rescission was

entered and a vendee's lien established upon the property to secure the money paid, with interest thereon from the date of its payment, at the rate of eight per cent. per annum.

There are two general propositions urged here by the respondents, one at least of which is necessary to sustain this judgment. The first claim of respondents is that under the provisions of this will a contingent remainder was devised, and that the interest in the estate was not vested but that it would remain open to admit the unborn children of Mrs. Foorman, one of the devisees of the will; that such children, if any should be born, would not be bound by the action of the administrator in conveying this land, because necessarily they could have no notice and could make no appearance, and that their right to litigate the title would not be barred by the judgment in this action, and that consequently it was out of the power of the defendants, the appellants here, to make a good deed, or convey a marketable title to the land in question.

The other claim is that, conceding the power of the executors to convey a good and sufficient title to the land, they had not proffered such a deed within a reasonable time after the tender of the balance of the purchase price had been made, and hence they had a right to elect either to bring an action for the performance of the specific contract, or to declare a rescission of the contract and sue for the recovery of the money advanced.

Whatever may be the merits of these respective contentions, which we will notice hereafter, it is evident that the claim to a vendee's lien to secure the refunding of the money already paid cannot be maintained, and is really inconsistent with the theory advanced by the respondents that no good and sufficient title can be made by the appellants to this land; for if, by reason of the fact that the executors are not possessed of the legal title of the land, and that a contingent remainder is in waiting for unborn heirs, the executors are unable to make a title which would bind such heirs, certainly the other horn of the dilemma would be equally out of reach of the appellants, for the heirs would be equally

unaffected by the judgment of the court in disposing of the land in question for the satisfaction of the purchase money already paid.  In other words, if the interest of the heirs cannot be reached and disposed of for the benefit of the estate, it cannot be reached or disposed of for the benefit of the other contracting parties.

On the first proposition, whether the title to the estate that belonged to the deceased vested immediately in the heirs upon his death or not, it seems to us it is not necessary to decide ; for the investiture, whatever it may be, or whenever it may occur, must be subject to claims that have legally attached by contracts with the deceased before his death. Or, in other words, the heirs take subject to the rights under the contract.    The heir cannot take anything more than the devisor had at the time of his death, because the devisor could not will any more than he possessed.    The will cannot possibly operate to abridge or destroy rights which have already attached, or enlarge the estate.    All the right that Mrs. Heller had in this land, after she had entered into the contract of sale, was the right to the money which represented the purchase price (excepting, of course, the right to rescind under certain contingencies) ; that is all the interest she could have assigned or conveyed or devised.    Her estate cannot be augmented by the mere fact of her death ; and neither can it be diminished.    Her heirs under her will must take just what she had a right to devise and nothing more, and she had a right to devise what she had and nothing more.    Under the other theory she would have a right to devise what the respondents had, viz : the right to the title to this land ; and the unjust and anomalous position would logically follow that one of the parties to a contract could enforce the terms of the contract, while the other party would be powerless to do so ; for it cannot be questioned that the heirs would have a right to the benefit of the contract made by the devisor.    Such a holding would be so manifestly unjust that nothing but the plainest and most mandatory provisions of the statute would justify such a construction.

38-10W

These propositions seem to be so plainly and manifestly the law, and so in accord with common sense and common honesty, that the discussion of technical law with relation to titles in connection with this case appears almost an effort to make murky and uncertain that which is clear and certain ; and the discussion of technical questions and the citation of numerous cases is rendered, it seems to us, especially useless by the plain provisions of our own statutes.    Sec. 1042, Code Proc., provides that :

" Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates."

Sec. 1117, which occurs in a chapter on specific performance of contracts of deceased persons, provides that :

" If any person who is bound by contract, in writing, to convey any real property, shall die before making the conveyance, the superior court of the county in which such real estate or any portion thereof is situate may make a decree authorizing and directing his executor or administrator to convey such real property to the person entitled thereto."

We take it that, under the comprehensive language used in this statute, it applies to *all* persons who have contracted in writing to convey real property, whether they have died testate or intestate, and without regard to the conditions of their will.    It is to be conveyed to the persons entitled thereto under the contract ; and § 1123 provides that :

" The conveyance made in pursuance of a decree shall pass to the grantee all the estate, right, title and interest contracted to be conveyed by the deceased, as fully as if the contracting party himself were still living and executed the conveyance in pursuance of such a contract."

In *Bruck v. Tucker*, 32 Cal. 426, it was held, as it seems to us it must always be held, that " no real property passed to the devisee under the will which the devisor conveyed or contracted to convey in his life time"; and the court, on petition for rehearing, uses this unequivocal language :    " The

will of course operated only upon so much of the mill tract as legally and equitably belonged to Dr. Bale [the devisor] at the time of his death."

It is true that there is a special procedure pointed out by the statute, but the fact that the statute makes this provision for conveying the title by the executor or administrator, refutes the idea that the title cannot be conveyed by reason of any of the provisions of the will which it is claimed creates a vested remainder to the living children, but is subject to open and let in after-born children.

We have read with much interest the cases cited by respondents on this proposition, and the many cases referred to in the text books cited. They discuss in all their different bearings the distinctions existing between vested and contingent remainders, and while under the authorities cited, which substantially hold that where there is a doubt whether a remainder is vested or contingent it will be construed as a vested estate, and the other equally well established rule that estates in remainder vest at the earliest possible moment unless there be a clear manifestation of the testator to the contrary, it is doubtful if the contention of the respondents that the remainder under the will is not vested can be maintained by construction of the will in this case, it seems to us the authorities cited have no application whatever to the case in point. All these cases involve contests between the heirs themselves, and however they may establish the law as to the rights of contesting heirs, they have no application, directly or indirectly, where the contest is between the heirs and outside parties claiming under contract of sale with the devisor. Upon that question, which is the only question presented for our consideration under this phase of the case, they shed no ray of light. Hence it is unnecessary to specially review them. It may be true, as contended by respondents, that all the children of Mrs. Heller's daughter may be supposed to be the objects of her bounty; but the bounty was bestowed upon all the heirs, whoever they might be, subject to the terms and conditions of the contract already made.

In *Hays v. Hall*, 30 Am. Dec. 530, an Alabama case (9 Port. 374), it was held that where the specific execution of an agreement respecting lands would be decreed between the parties, it would be decreed between all the parties claiming under them in privity of estate or representation of title, unless other controlling equities intervene; that the purchase money agreed to be paid by a party to a contract for the sale of land is treated in equity as the personal property of the vendor, and as such goes to his personal representatives; that such representative had all the remedies to recover or retain such purchase money as the vendor would have if living. The court in that case cites 2 Story, Equity Jurisprudence, 98 and 99, which lays down the rule that the purchase money is treated in equity as the personal property of the vendor, and as such goes to his personal representatives. The court proceeds:

"If it be unpaid at the vendor's death, the personal representative has a right to receive it. If the payment of the money and the conveyance of the estate are, according to the agreement, to be made at the same time, the personal representative would Have a right, in a case where the time agreed upon for performance was not of the essence of the contract, if in no other case, to a specific execution of the agreement, if he applied to a court of equity for the purpose, in a reasonable time after the day for performance."

The discussion in this case generally seems to sustain the view that it was within the power of the administrator to convey title by deed to the property in question.

In *Fulwider v. Peterkin*, 2 G. Greene, 522, it was held that the statute authorizes a proceeding against an executor or administrator for a conveyance in pursuance of a contract with the deceased, the statute being substantially like ours; that in a proceeding against an estate for a specific performance it is not necessary to make the heirs a party to the conveyance. Said the court, referring to the statute:

"This statute contemplates and clearly gives the right to proceed against either executor or administrator, for a conveyance in pursuance of the contract of the deceased. The administrator standing in the place of the deceased person,

there is an obvious propriety in making him the party in a proceeding to enforce the performance of a contract made by deceased in his life time, the obligations of which rest upon the administrator as his representative. But the statute has settled this matter in such explicit language, that there cannot be room for reasonable doubt. The 29th section, page 703, provides that 'if it shall appear, that the plaintiff is entitled to a conveyance, the court may authorize or require the executor or administrator of the deceased party to convey the estate in like manner as the deceased person might and ought to have done if living.' * * * And the 30th section provides that every conveyance made in pursuance of such decree shall be effectual to pass the estate contracted for as fully as when made by the contracting party himself. It is not necessary, in a proceeding under this statute for a specific performance, that the heirs should join in the conveyance in order to pass a good title. The court can decree the administrator or executor to convey without the heirs, and the conveyance made in pursuance of such decree will be as effectual to pass an estate in fee, as if made by the party in his life time. * * * The complainants have the right by virtue of the statute, to enforce a specific performance against the administrator and thereby obtain a decree against him, and by such decree, or a conveyance made in pursuance of it, obtain a perfect title.''

In this case it does not appear whether or not the vendor died intestate ; but it appears from the language of the opinion that that fact would cut no figure in the determination of the case ; for the decision was based upon the theory that the complainants having a statutory right to enforce a specific performance, they could not be deprived of that right. As we before said, the statute was in substance the same as ours, so far at least as its bearing on the question involved in this case is concerned. The statute provides that every conveyance made in pursuance of such decree shall be effectual to pass the estate contracted for as fully as if made by the contracting party himself.

It would seem that this language is so direct that it is not susceptible of construction, and that if the statute is constitutional there is nothing to be said against the validity of the title offered. The Iowa statute is, however, no more definite than ours, which provides, as we have seen, that the

conveyance made under it shall pass to the grantee all the estate, right, title and interest contracted to be conveyed by the deceased as fully as if the contracting party himself were still living and executed the conveyance in pursuance of such contract.    While, as if to make assurance doubly sure, it provides in § 1124, that a certified copy of the decree shall, when recorded with the deed in the office of the auditor of the county where the lands lie, be conclusive evidence of the correctness of the proceedings and of the authority of the executor or administrator or commissioner to make such conveyance.    It will also be observed that this decree may be made upon notice only to the administrator, and while it permits the heirs, creditors or devisees to appear and resist the petition, it makes the test of jurisdiction notice to the administrator only.

It is a patent fact that the central idea is the enforcement of contracts according to their terms, and that the administrator is made the legal representative of the deceased to convey the title.    If the validity of a contract is to be made contingent upon the life of one of the contractors, or its invalidity upon his death, and its life is made further contingent upon the peculiar provisions of a will which either party to a contract has a right to make, reliance upon a contract would be a dependence upon a slender reed ; and the happening of a contingency of this kind cannot, under any system of law or ethics, be held to release one party to a contract without releasing the other.    The result would be that in contracts in relation to land, either the party who bought on a falling market or the one who sold on a rising market would always be anxious to rescind, and this would render contracts unstable, uncertain and unreliable.    The case at bar is a pertinent instance.    The decedent, while land was high, sold this land in good faith, and doubtless shaped her business with reference to the sale, receiving in hand a large sum of money as part payment thereon.    With this money she presumably made other investments, or spent it in the ordinary pursuits of the pleasures or business of life.    And now, by the accident of her death and

when the land is comparatively worthless, the estate is called upon not only to yield up her right under the contract to the balance of the purchase money, but to return the money which she already had received and which became a part of her personal estate when she received it, with interest from the date of its payment. This would work such a hardship upon the estate and be so manifestly inequitable, that a court of equity would never adjudge it, if the rights of the other party could possibly be preserved without such a sacrifice.

We think the cases cited by the appellants sustain their contention ; but even adopting the theory of the respondents, that they were decided not on the theory that the title vested in the executor but because under their statutory system authorizing the personal representative to sue or be sued in certain cases, the heirs or devisees in whom the legal title rests are necessarily bound and concluded by the judgment for or against the personal representative in such cases and hence are not necessary parties, they are equally applicable, for under the provisions of our statutes the heirs, on the same reasoning, would be bound and precluded by the judgment. And if the title vests in the administrator for the purpose of complying with the contract, it must necessarily vest there for the purpose of answering to the demands of a court of equity to convey in an action brought for the express purpose of enforcing the specific contract.

But there are many other sections of the statute which specially confer the power to convey real estate upon the administrator; § 956, Code Proc., provides that the executor shall have a right to the immediate possession of all the real as well as personal estate of the deceased, and may receive the rents, etc. See, also, § 1041. Sec. 1023 providing for sales of real estate, especially declares that the deed or conveyance made shall be deemed to convey all the estate, rights and interest of the testator or intestate at the time of his death.

In fact, it seems to us that a consideration of all the different provisions of the statute irresistibly forces the conclusion that the legal title vests in the administrator for the purpose

·of passing the title to purchasers in conformity at least with the conditions of contracts made by the testator. It will not be questioned that a mortgagee, after the death of the mortgagor, has a right to foreclose the mortgage and sell the mortgaged property for the payment of his debt, and that the sale will convey a good title to the premises mortgaged. The same legal objections could. be raised to a sale under a mortgage as can be raised to a sale under a contract of the kind in point. But while, under the common law, it is true that the legal title passes to the mortgagee under a mortgage, yet under the provisions of our statute the mortgage is but an incumbrance. The same statutory provisions are in existence in California, and under these provisions it was held, in *Cunningham v. Ashley*, 45 Cal. 485, that an administrator, who was a party to an action involving the title of his intestate to real estate, represents the title which the deceased had at the time of his death; that when an administrator sues in ejectment to recover the land of his intestate and alleges the seizin of the deceased, and issue is joined on this point and a judgment rendered, the judgment is an estoppel and binds the heirs of the intestate and all persons claiming under them; that if such judgment is in favor of the administrator it amounts to an adjudication that the title of the deceased is superior to that on which the defendant relies, and estops the defendant, his heirs and privies; if it is in favor of the defendant, it is an adjudication that the title of the defendant is superior to that which the intestate had, and estops the heirs of the intestate, the administrator, creditors and all persons asserting title as having vested in them by reason of the death. And further, that such estoppel applies not only to the title which is set up, but to any title which may have been set up in the action. It seems to us that this case, if received as an authority, is absolutely conclusive of the question under discussion here. The court, in the course of its argument, says:

"It is insisted, however, for the appellant Ashley, that the judgment rendered in the action of ejectment, instituted, as we have seen, by the administrator of Kittleman, cannot

be held to have concluded his heirs, 'for the reason that the administrator did not have in him the legal title.' The one hundred and ninety-fifth section of the act to regulate the settlement of the estates of deceased persons, provides, in express terms, that an administrator may maintain an action 'for the recovery of any property, real or personal,' in any case in which the same might have been maintained by the intestate. [It will be observed that the same provision is incorporated in our statute.] In view of this provision of the statute, it becomes unnecessary to inquire into what is the nature of the title of an administrator, either as to the lands or goods of his intestate, or whether he can be properly said to have in himself any title whatever to either. The principle of law upon which the estoppel rests has reference to the fact that in the former action the hostile titles were directly opposed before the court rendering the former judgment, and that the superiority of the one over the other was ascertained and fixed by that judgment. That an administrator appearing in an action involving the interests of the estate, represents as well the heirs as the creditors of the deceased is well settled. But he represents not only the interests of heirs and creditors, but also the title which the deceased had at the time of his death. * * * Title is the means by which the right to possess property is made to appear. The authority conferred, and the duty expressly imposed by statute upon the administrator to institute actions to recover real property belonging to the estate which he administers, necessarily import that he is to make such averments in pleading, and support them, if he can, with such proof as would entitle him in point of law to recover the possession of the premises by the judgment of the court. The title upon which he is to recover is not his own title, nor that of the heirs or the creditors he represents, but the title of the intestate. The seizin upon which he must rely is the seizin which the intestate had at the time of his death. It is that title and that seizin which is put in issue, and the sufficiency of which is determined by the judgment rendered in the action.''

And so in the case at bar, the title that is to be adjudicated in this case is the title that was in the estate at the time of the testator. And if the testator could, before her death, have conveyed a good title, and it had not in any way passed from her at the time she died, the administrator or executor, as her representative, can convey as good a title as she

could have conveyed, if living. It seems to us that this decision is directly in point, and that the principles announced are applicable to cases of specific performance.

The supreme court of the United States, in *Meeks v. Olpherts*, 100 U. S. 564, sustains this doctrine, and holds that the right of action in a case before the court was in the administrator, and quotes in support of their holding *Beckett v. Selover*, 7 Cal. 215 (68 Am. Dec. 237), to the effect that in all suits for the benefit of the estate the administrator represents the heirs.

In *Bayly v. Muehe*, 65 Cal. 345 (3 Pac. 467), it was held that in an action against an administrator to foreclose a mortgage, the heirs of the deceased mortgagor are not necessary parties, the court holding that the lien created by the mortgage arises out of contract; that the mortgage itself is a contract pledging the property embraced in it for the payment of the debt it is given to secure; that the action of foreclosure was founded on this as well as the principal contract for the payment of money, and that, under the statute declaring that all actions founded upon contracts may be maintained by and against executors and administrators in all cases in which they might have been maintained by or against their respective testators or intestates, the executors or administrators represent the title of their respective testators or intestates in such foreclosure suits, and that the statute has so far changed the common law rule as to render it unnecessary to make the heirs parties; citing *Cunningham v. Ashley*, *supra*, to the effect that a judgment in ejectment against the administrator concludes the heirs although not parties to the action.

An action to quiet title is properly brought in the name of the administrator. *Curtis v. Sutter*, 15 Cal. 260.

An action to compel the specific performance of a contract to convey may be maintained against the administrator. *Lowell v. Kier*, 50 Cal. 646.

In Texas, under statutes similar to ours, but less pointed so far as the rights of the administrator to convey real property are concerned, in the case of *Thompson v. Duncan*, 1 Tex.

485, which was an action to try title, the court decided that "the whole estate of a testator or intestate passes at his death to his personal representative for administration, and hence an executor or administrator may sue in his own name and character for the recovery of the lands belonging to the estate of his testator or intestate."

And in *Howard v. Republic of Texas*, 2 Tex. 311, the court says :

"The act of the administrator is not for his own advantage, but for the benefit of the heirs of the deceased. Having the care and control of the entire estate, it would seem to be his peculiar duty to prosecute and defend suits in which the succession is interested, during the continuance of the trust which he has assumed."

And in *Shannon v. Taylor*, 16 Tex. 415, the language of the court was that :

"It is well settled by the decisions of this court, that in an action for the specific performance of a contract made by the testator or intestate for the conveyance of land, it is not necessary that the heirs should be made parties in order to bind them. For the purpose of such a suit, the executor or administrator, under the laws as they existed at the time of the rendition of this decree, is the representative of the heirs, in respect as well of the realty as of the personalty. * * * The decree was as effectual to bind them, as if they had been made parties to the suit by the service of process upon them ; *as well by this statute* as by the general principles and provisions of the laws regulating the settlement of estates."

It is conceded by the respondents that the authorities from Texas are in point, but it is claimed that they are based on the doctrine of the civil law rather than the doctrine of the common law which pertains in this country. They seem to us to be based upon a construction of the statutes which, like ours, so manifestly clothed the administrator with the right to convey the title of the devisor that reference to either the principles of common law or the civil law is not necessary and would be no aid in their construction. We are satisfied that all the interest that the heirs have in the land involved in this case is an interest in the purchase

money, and when that purchase money is secured to the estate by enforcing a compliance with the contract, the heirs have not been, and can in no wise be, injured or have any cause of complaint, and cannot be heard to raise any question concerning the validity of the conveyance; and therefore, that the real estate described and devised by the will vested in the executors, and that they had authority and power under the law to deed to the plaintiffs said real estate pursuant to the contracts made. And it may be noticed that this contract especially provides for this result, for in the contract itself the following provision occurs :

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract, and that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

It seems to us that the court erred in finding that the plaintiffs were not in possession of the land in controversy. The contract itself provides that upon certain failures of payment the contract shall, "at the option of the party of the first part, be forfeited and determined and the party of the second part shall forfeit all payments made by him on this contract; that such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages sustained by them, and they shall have the right to re-enter and take possession of the premises aforesaid."

While the testimony in the case is rather barren in regard to acts of possession, it seems to us that it was the plain intention of the contract that the possession should be given by the execution and delivery of the contract. If the possession still remained in the vendor the provision that he should have the right in case of forfeiture to re-enter and take possession of the premises aforesaid, would be meaningless.

The remaining question is did the court err in holding as a conclusion of law that the defendants having failed and

refused to convey the land upon tender of the money, and for
a reasonable time thereafter, and up to the time of this suit,
and thereafter until the trial thereof, the plaintiffs were
entitled to a rescission. We think under the testimony in
this case that this conclusion was inconsistent with the facts.
The contract does not stipulate that time shall be of the
essence of the contract, so far as making the deeds is con-
cerned, but only so far as the time of payment is concerned.
The general proposition urged by the respondent, that the
vendee has a right to rescind a contract when he has done
all that he is called upon to do under the contract, and has
made the tender according to the contract, cannot be gain-
said, but the testimony of the respondents alone in this case
conclusively shows that no such tender as is contemplated
by the law in such cases was made. Waiving all technical
questions discussed and controverted in the trial, concerning
the legality of the manner of the tender so far as the money
was concerned, and conceding for the purposes of the case
that when the money was brought to the place agreed upon,
and the rightful amount was asserted to be there, it was the
duty of the vendor to count the same, yet it seems that the
tender was not made in good faith. According to the testi-
mony of Mr. Hyde, he was not prepared to pay this money
over to the executors until he was satisfied that they would
make him a deed which would be consistent with his views
of the law ; and it is easily ascertained from his testimony
that he would not have accepted a deed at that time and have
paid the money without having taken the deed to his attor-
neys for examination, for it seems that these doubts as to
the power of the executors to make this deed had already
entered his mind. It also further appears that a portion of
the taxes which he had agreed to pay had not been paid,
and the executors would have been under no obligation to
furnish him with a deed until all the conditions of the con-
tract had been complied with.

Hyde admits that he knew that Mrs. Heller was dead, and
that she had made a will, although he is not certain whether
he knew the conditions of the will or not at the time of the

alleged tender. But he testifies that he did not know whether or not the will had been probated; that he thinks he did not; at all events, that he made no inquiry to ascertain that fact. The following excerpt from the testimony shows that he would not have received the deed at the time the tender was made:

"Question: Do you mean to say that if Heller would have executed a deed there, you would have paid that money upon the delivery of it?

Answer: After my attorneys had passed upon it and it was a good deed.

Q. Then you didn't expect to pay the money upon the execution of such a deed as he might make at that time there?

A. If it was a deed I thought was good.

Q. You expected to submit that matter to your attorneys?

A. I don't know. I didn't think much of anything about it. * * * * * * *

Q. Would you have paid that money over there, if he had tendered you a deed executed by himself and Fanny Heller, as executors of that will, at that time?

A. I can't say that I would or not.

Q. You would not have paid that money upon a deed executed by M. M. Cowley?

A. No, sir.

Q. Or by the three of them together?

A. I don't know whether I would or not.

Q. You can't say that you would?

A. No.

Q. Then you did not go down there with the expectation of getting a deed?

A. Yes, sir.

Q. Who from?

A. Mr. Heller, or whoever would tender me a good deed. They had plenty of notice. A deed my attorneys or myself would consider good. I didn't suppose they would give me a deed until they got their money."

And much more to this effect. And while Mr. Hyde testifies in one place that he went there expecting to get the deed, his testimony, construed as a whole, shows that he really did not expect that such a deed as he would receive could be tendered him. In fact, his testimony further on

shows that he must have known that it could not be tendered him ; for in answer to the question :

"You had not inquired whether the will had been probated and the executors had qualified under it ? " he said : " I presume I knew it had not.   I don't know.

Q.   You think you knew that it had not been probated ?

A.   I presume I did.   I don't know.

Q.   And therefore that there had been no issuance of letters upon it ?   You think you knew that fact ?

A.   I presume I did.   I don't know, though.

Q.   You knew also that you were to get title to this property from Mrs. Heller's representatives or heirs ?   You knew that Albert Heller alone could not give you title to it, didn't you ?

A.   Yes, sir."

Some light is thrown upon this transaction by the testimony of E. Drain, examined by plaintiff.   In the course of his testimony the following was given :

" Question :   You did not count anything more than the $174.30 ?

Answer :   No.   You understand we were in a hurry to get the money there.

Q.   Why was that hurry ?

A.   I don't know.   I was told to get this money ready as quickly as we could, and get it up there.

Q.   And you were told to be careful about it and remember what was there ?

A.   Yes.

Q.   Who told you that ?

A.   Mr. Hyde.

Q.   Did he tell you why he wanted you to be so careful ?

A.   Yes, after we had returned, because if it was refused, there might be trouble and be sure to remember how much money we had taken down, so we would be able to swear if anything came of it.

Q.   Did he give you that caution before or after you had been to the Traders Bank ?

A.   After we returned."

Mr. Hyde testified that he requested Heller to come to the bank and receive the money several days before the day that the money was tendered.   This is flatly disputed by the testimony of Heller.   His testimony was as follows :

"Answer.    Four or five different times after my wife was
dead and they refused to pay.    We needed money.    We was
in distress for money.    My wife died and left the expense on
hand, and I went to Mr. Hyde and the last time he told me
he would dig up a little money at the Traders National
Bank, and I went there about the closing up of the bank,
and about ten minutes after there came the men bringing
that money in the bank there.

Question.    Now, what day was it Mr. Hyde told you to go·
down to the bank ?

A.    I can't exactly tell the day.    I didn't keep the day.

Q.    Was it the same day you went to the bank ?

A.    Yes, sir ; it was that day they claim the tender.

Q.    At what time in the day was it ?

A.    It was up about three.

Q.    At what time did you see him that day ?

A.    I seen him between one and two o'clock in the after-
noon.    I was hunting him all day.

Q.    What did he say to you at that time ?

A.    I told him we was hard up for money and we needed
it, and he promised it over and over, and he told me I should
be there at three o'clock that afternoon at the Traders Bank,.
and he would meet me and dig up a little money for me.

Q.    Did he say anything to you about a deed?

A.    No, sir ;  not a word.

Q.    Did he say anything about paying all the money?

A.    No, sir ; didn't say nothing at all to me.    He said he·
would dig up a little money.    Come to the Traders National
Bank.''

And further on :

"Mr. Cowley said to Mr. Hyde it was an improper time·
to come for a deed now, that I was not authorized by the
court yet.    Mr. Cowley explained it to him that I had not
the letters of administration but would have them in a few
days and they would get their deed, and that is what Mr.
Cowley said.

Q.    What did Mr. Hyde say then?

A.    Nothing.    Mr. Cowley asked him what he was doing·
all this for and he said he was working for a point, that is.
all ; wanted to make a tender.''

And much more to the same effect.    The tender being an
affirmative proposition to be established by the plaintiffs,
we think, under the testimony, presuming the witnesses to·

be equally credible, that they failed to establish the tender on the points disputed; though as we before have stated, without the contradictory testimony, and construing the testimony of Hyde alone, we think it would not be established.

But further it appears that this alleged tender was made on the 12th of April, 1893, before the will was probated and before the executor had been appointed, for it seems that Heller did not qualify until May 19, 1893, one day after suit was commenced in this action, viz., May 18, 1893. So that a tender to parties who were not representatives of the estate at the time was no tender at all, and cannot be pleaded as a tender here. It is claimed, however, by the respondents that, inasmuch as the tender had been made and the executors had been informed that a deed was demanded, after the will was probated they should have tendered the deed. According to the testimony of Hyde, however, the deed would not have been received if it had been tendered, and no tender of the money would ever have been made; for Hyde testifies that in a week or ten days after the alleged tender he received the information from Binkley & Taylor, lawyers and money loaners, that he could not get a good deed, and that he relied upon that information; and if he did rely upon that information, which he obtained within a week or ten days after the tender, and the executors had not been appointed or qualified until that week or ten days had expired, then by the time the executors could have tendered a deed, Hyde, according to his own statement, would not have received it; and the tender of the money was therefore not kept good. Parties must always have a reasonable time to comply with the conditions of their contract, and while we do not think that even the time that had elapsed between the asserted tender and the commencement of the action was a reasonable time, there was no time at all allowed the defendants to execute this deed after they had qualified and were capable of executing it.

The record shows, and it is undisputed, that the plaintiffs were in default so far as their payments were concerned; that Mrs. Heller had extended grace to them in not rescinding the contract and forfeiting the money, which she might

39-10w

have done under the contract, or compelled them to make a specific performance of their contract; and when by the accident of death they were prevented for a short time from obtaining a deed which would long ago have been executed had they complied with the strict terms of the contract, we think it would be unconscionable to allow them now to take advantage of this accident and, under pretext of a tender made as this one was made, to rescind this contract and recover back their purchase money.

But in addition to this, the complaint itself waives all right to rescind. An offer to specifically perform at the time the action was commenced was in this language:

"But, nevertheless, plaintiffs submit upon this point, as upon all other points in this case, to the judgment of the court, and hereby and now and at all times offer to said defendants and to this court to do full and complete equity in the matter as may be adjudged by the court; and plaintiffs do now and hereby allege that they have a right to rescind this contract because the defendants are unable to make the title to said real estate as aforesaid; and if this court shall adjudge that they have such right, plaintiffs hereby bring into court said contract and tender the same for rescission and cancellation as a part of the judgment in this cause. But nevertheless and notwithstanding this, plaintiffs hereby offer, if the defendants can make to them a good, marketable title to said real estate, to carry out and complete said contract on their part as fully as by its terms they are required to do."

It seems to us that having solemnly offered in their complaint in case the court found that as a legal proposition a good deed could be made, that they would complete their contract as they were required by its terms to do, they are now estopped from urging their right to rescind. This is not an allegation that they have rescinded the contract, but it is an allegation that they have a right to rescind and that they waive that right in case the court shall find that a marketable deed can be made to them; and as the court has found that a marketable deed can be made to them, they have nothing left to do under their own pleadings but to carry out their contract, pay the balance due and receive their deed.

And we think that after an issue of that kind presented by the complaint the answer of the defendants, was sufficient, and that they were justified in waiting until the question presented by the complaint was decided by the court before making any further or more specific tender than they did make in their answer.

For these reasons the judgment will be reversed and the cause remanded with instructions to the lower court to ascertain the amount due on the contract, to authorize the executors to make a deed in accordance with the provisions of the law to the respondents, upon the payment of the amount due, and to adjudge a lien upon the land in controversy in favor of the appellants, to secure the balance due on the purchase price.

STILES, SCOTT and HOYT, JJ., concur.