[No. 16255. *En Banc.* December 5, 1921.]

## E. C. FINCH, *Appellant,* v. A. P. SPRAGUE et al., *Respondents.*[1]

VENDOR AND PURCHASER (53)—RESCISSION BY VENDOR—ELECTION TO RESCIND AND NOTICE. Under a contract for the sale of land, which provided that there should be no forfeiture unless ten days' notice were given the purchaser, a failure to give such notice and the giving instead one abrogating the contract, entitled the purchaser to rescind and sue for damages.

SAME (86)—CONTRACT—PERFORMANCE—TITLE OF VENDOR—WAIVER OF DEFECTS AND OBJECTIONS. A vendor may contract to sell land he does not own, it being incumbent on him to have title at the contractual date of delivery, and knowledge by purchaser of the vendor's want of title does not constitute either waiver or acquiescence.

SAME (94)—PERFORMANCE OF CONTRACT—PAYMENT OF PURCHASE MONEY—TENDER. Failure of a purchaser under a contract for the conveyance of land to tender the price or offer to perform on the date stipulated for performance would not place him in default, where he has knowledge the vendor is not in a position to convey the lands.

SAME (161)—REMEDIES OF PURCHASER—RECOVERY OF PURCHASE MONEY—PARTIAL FAILURE OF TITLE—RESCISSION. Where a contract for the conveyance of land has been rescinded by the vendor, the

[1]Reported in 202 Pac. 257.

Dec. 1921]        Opinion Per HOLCOMB, J.

purchaser is entitled to abandon the contract and recover the por-
tion of the purchase price paid thereon.

SAME (171)—REMEDIES OF PURCHASER—RECOVERY OF PURCHASE
MONEY—DEFENSES—TENDER OF PERFORMANCE. Where a vendor, under
a contract to convey, has declared a forfeiture or renunciation of
the contract, and the purchaser has relied thereon and begun an
action for damages, the vendor cannot reinstate the contract by an
offer to perform.

SAME (64)—RESCISSION BY PURCHASER—ESTOPPEL OR WAIVER. An
allegation in a complaint by a purchaser for damages for failure of
a vendor to perform a contract to convey that he "would now be
willing to perform his contract but for the fact the defendants have
placed it out of their power to perform," would not constitute a
waiver of his right to rescind.

SAME (182)—REMEDIES OF PURCHASER—BREACH OF CONTRACT—
DAMAGES. In an action for damages for failure to convey a quantity
of land, recovery is limited to a return of the money paid, with
legal interest, in the absence of evidence sufficient to show damages
by way of loss of sales and contemplated profits.

TOLMAN, MACKINTOSH, and BRIDGES, JJ., dissent.

Appeal from a judgment of the superior court for
Grays Harbor county, Reynolds, J., entered July 27,
1920, upon findings in favor of the defendants, in an
action on contract, tried to the court. Reversed.

*E. E. Boner* and *Stephen J. Chadwick,* for appellant.

*Theodore B. Bruener* and *W. H. Abel,* for respond-
ents.

HOLCOMB, J.—Appellant brought this action to re-
cover damages in the sum of $14,600, with interest
and costs, for the breach of a contract for the purchase
of land.

On May 26, 1919, appellant entered into an optional
contract whereby he undertook to purchase, and re-
spondents agreed to sell, 920 acres of land, for a con-
sideration of $36,800; $1,600 was paid on the execution
of the contract; $1,000 on June 10, 1919, and $2,000 on
June 20, 1919, as specified in the contract.  On the next

day or so after the execution of the contract, respondent came to appellant and told him that he had included land in the contract to which he had no title; that he would undertake to arrange for the purchase of this land by another, one Davenport, so that he could, as he puts it, "eventually comply with his contract to the letter." The Finch-Sprague contract provided for the final payment of $32,200 on or before December 1, 1919. Time was not of the essence of the contract, but it was provided in the contract that there should be no forfeiture unless ten days' notice were given to Finch.

Sprague entered into a contract with Davenport for the purchase of the 520 acres of land not owned by Sprague, but which was included in his contract with appellant, which provided that the final payment should be made on December 1, 1919, and, by self-executing provisions, the contract would terminate if not performed on or before that date. The various payments made by appellant totaled $4,600, leaving no payment but the final payment due December 1, 1919.

Appellant did not make or tender the final payment on December 1, 1919, and on December 26, 1919, respondent notified appellant by letter as follows:

Carlisle, Wash., December 26, 1919.
"Mr. Edward C. Finch,
"Aberdeen, Wash.
"Dear Sir: As we have heard nothing from you to date in this matter of the contract we entered into of May 28, 1919, we hereby notify you, as per agreement, that this contract is now null and void, and that no longer will be considered.
"Will you kindly leave the abstracts with Mr. Bruener, also as per your offer, please sign some sort of quit claim so as to clear the record in the matter. Mr. Bruener, will make out such papers any time you will call on him.

"Thanking you for your attention to same and regretting that our first deal did not terminate to our mutual satisfaction.

"Yours truly,

"A. P. Sprague."

This letter was addressed and sent by registered mail to Finch at Aberdeen, Washington, and forwarded by the postal authorities to him at Roundup, Montana, where it was received by him on or about December 30, 1919. Immediately upon its receipt Finch returned it to his attorney at Aberdeen, with instructions to protect his interests, and the complaint in the present suit was verified on January 3, and service made on respondents on January 5, 1920.

The trial court made findings and conclusions in favor of respondents, and judgment was entered accordingly.

Respondent contends that the above notice was in accordance with the contract and contemplated a compliance by appellant within the ten-day period, but we think it went further and was an absolute abrogation of the contract when, by its terms, it was still in effect, as appellant had at least ten days after notice within which to perform. This notice was never given.

At the time of giving the notice on December 26, 1919, respondents had not the power to convey the title contracted to be conveyed to appellant. Five hundred twenty acres of the land did not belong to respondents. True, they had contracted with Davenport to obtain the same, but at the same time contracted that title should pass only upon final payment of the purchase price on or before December 1, 1919, with self-executing provisions of the contract so that, if not fully performed at that date, it would terminate. It is true Sprague was not bound to have any title at the time

he made the contract. A vendor may contract to sell something he does not yet own. *Webb v. Stephenson,* 11 Wash. 342, 39 Pac. 952; *Morris v. Columbia Canal Co.,* 75 Wash. 483, 135 Pac. 238; and it is urged on the part of respondents that, when Finch was informed that Sprague did not have title to a portion of the land in controversy, and later informed that Sprague had procured a contract from Davenport for the 520 acres of land not owned by respondents, appellant acquiesced therein, and is therefore estopped to claim any breach of the contract on the part of respondents.

Although the trial court so found and concluded, we can find no evidence of acquiescence on the part of the appellant in the contract with Davenport, nor of any waiver on the part of appellant as to the failure of title on the part of respondents to the 520 acres of land. While it is true that appellant continued his efforts to make sale of all of the lands which he had under option, which Sprague had contracted to convey, he had a right to presume that Sprague would acquire title to the land which he had contracted to convey to appellant so as to be ready to perform his contract when the time came. It was not exigent upon him to require title to be in respondents prior to December 1, 1919, nor to object to its then status. This conduct on the part of appellant was only such conduct as he had a right to pursue under his option. It did not constitute either waiver or acquiescence. Furthermore Davenport, with whom Sprague contracted for the remainder of the land, testified that appellant did not accept or agree to the Davenport contract with Sprague, but asked Davenport to make a contract direct to appellant for the remainder of the land, which was refused. And when the contract with Sprague had about reached its period of maturity, or

in November, 1919, appellant went to respondent and asked for an extension of time, which was tentatively agreed to, provided Davenport would give Sprague an extension of time on his contract. This was refused by Davenport. Consequently, when December 1, 1919, arrived, Sprague had no title to the greater portion of the land, and after that date had no power to compel the conveyance thereof from Davenport. Of this appellant was well aware, and when the respondents gave him the notice of December 26, 1919, both were well aware that it was entirely out of the power of respondents to convey to him the lands that had been contracted to be conveyed. He therefore immediately began his action for damages for breach of the contract.

Since the vendor, to the knowledge of the vendee, was not in position to convey the lands, a tender or offer to perform on appellant's part would have been a useless ceremony, and his failure to make such tender cannot be made the basis of any relief on behalf of respondents on the theory that appellant was in default. *Lawson v. Sprague,* 51 Wash. 286, 98 Pac. 737.

"If a vendor agrees to convey title at a given time, and has no title when the date for performance arrives, the question of a reasonable time for preparing a deed does not enter into the case. There is a breach of the agreement to convey for which the purchaser may at once rescind." *Walsh v. Colvin,* 53 Wash. 309, 101 Pac. 1085.

Appellant did not rescind when the day for performance arrived, but respondents afterwards did, and appellant at once treated the contract as rescinded on respondents' part, as he had a right to do. *Maffet v. Oregon & Cal. R. Co.,* 46 Ore. 443, 80 Pac. 489; *Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493, L. R. A. 1918A 537.

In the above cited Oregon case it was held that,

"Treating the defendant's declaration that the contract is cancelled, and no longer of any force or effect, as an abandonment, the plaintiff might himself abandon, and, the contract having thus come to an end, he might very well, as he has done, sue at law to recover what he has paid."

See, also, 13 C. J. 651.

Nor can the adverse party, after a declaration of forfeiture or renunciation, withdraw his renunciation and offer to perform. 13 C. J. 657; *Anvil Mining Co. v. Humble,* 153 U. S. 540; *Roehm v. Horst,* 178 U. S. 1; *Croup v. Humboldt Quartz & Placer Mining Co., supra.*

The tender of performance in this case, after suit has been commenced, was a tender of performance after Finch had elected his remedy upon Sprague's termination of the contract. The contract was already breached by Sprague when he terminated it. At that time he could not convey to appellant the greater part of the lands. The tender was therefore too late. After a party to a contract has repudiated it, or breached it, and the other party has relied and acted thereon, he cannot reinstate the contract by an offer to perform. *Waterman v. Bryson,* 178 Iowa 35, 158 N. W. 466; *Mutual Loan Society v. Stowe,* 15 Ala. App. 293, 73 South. 202; *Quarton v. American Law Book Co.,* 143 Iowa 517, 121 N. W. 1009, 32 L. R. A. (N. S.) 1; *Roehm v. Horst, supra.* In the last cited case, the United States supreme court reviews many American and English cases upon this question.

Respondents contend, however, that inasmuch as appellant's complaint alleged: "that Finch would now be willing to perform his contract but for the fact that the defendants have placed it out of their power to perform," was an offer to accept the performance on the part of respondents if respondents were able to

perform; and that, since they did procure deeds to the whole of the land, deposited them in escrow in the bank, and plead the same, appellant is bound by the tender, and waived his right to rescind. Respondents cite *Hyde v. Heller,* 10 Wash. 586, 39 Pac. 249, where it was held that, when a plaintiff in his pleading offered to perform if defendant could and would give title, and the defendant tendered a deed in his pleading, the plaintiff waived his right to rescind. In that case the court found that the offer to receive title had been made and the vendor was personally able to comply. In the form of action brought, this allegation was immaterial. At the time the allegation was made in appellant's complaint, there is no doubt that respondents were unable to perform their contract, and although they afterwards in some way procured title to the remainder of the lands, they had already put themselves in a position to allow appellant to elect his remedy and pursue it. This he had done, and the belated tender of performance after he had brought his action, not for specific performance but for the breach of the contract, cannot be sustained. A party in default cannot put the other party in default and create a cause of action for himself, or retain that which he could not retain upon rescission, by a demand for performance or a notice of forfeiture.

We are of the opinion that, on all of the controlling facts, the evidence preponderates against the findings of the trial court, and therefore do not justify its conclusions of law and judgment.

Appellant, in his reply brief, does not seem to insist upon the recovery of any more than the $4,600 paid on the contract, with interest thereon from the respective dates of payment at the legal rate, and this, we think, is all he is entitled to. Damages by way of loss of

·sales and contemplated profits were not sufficiently proven to allow such recovery. All that appellant is entitled to in the circumstances here shown is the return of the money paid, with legal interest from the respective dates of payment.

The judgment of the trial court is reversed, with directions to enter judgment in favor of appellant for the sum of $4,600, moneys paid on the contract, together with interest at the legal rate from the respective dates of the several payments.

PARKER, C. J., FULLERTON, MAIN, MITCHELL, and HOVEY, JJ., concur.

TOLMAN, J. (dissenting)—It seems to me that the majority opinion overlooks the simple governing points in this case.

Appellant knew that respondents did not have title to a portion of the land, and knew of the arrangements by which Davenport took title thereto, and the terms of his contract with respondents, before he made the payments of June 10 and June 20, 1919. That the Davenport contract called for final payment on or before December 1, 1919, in the absence of any evidence that Davenport then declared a forfeiture, or afterwards refused to accept payment and convey, is wholly immaterial. Respondents' notice to appellant of December 26, 1919, was clearly an attempt upon their part to claim a forfeiture which was provided for by the contract, and nothing more. As it did not by its terms accord appellant the benefit of the ten days of grace allowed by the contract, it was a complete nullity, and would have been held so to be if appellant had tendered the final payment within such ten-day period. Consequently, at the time this suit was instituted, the parties stood in the same position as they did before December 1, i. e., the contract was in full force and

effect; no payment was in default, and it was wholly immaterial whether or not respondents then had title. Appellant could have tendered final payment, demanded a deed, and if respondents could not then have conveyed title, might have had recourse to such remedy as he must have contemplated as a possibility when he made the earlier payments, knowing of the title in Davenport. On the other hand, at the time this suit was brought, respondents could have tendered deeds, including the Davenport interest (and it must be borne in mind that there is no evidence tending to show that they could not then have procured the Davenport interest), and demanded the final payment within ten days under penalty of forfeiture. This, the record shows, is exactly what they did, and good title to all of the land covered by the contract having been timely tendered, and final payment not having been made, appellant has no right of action.

The judgment appealed from should be affirmed.

MACKINTOSH and BRIDGES, JJ., concur with TOLMAN, J.