**UNITED STATES v. SEACOAST GAS CO., Inc. et al.**
**No. 14314.**

United States Court of Appeals
Fifth Circuit.
May 29, 1953.

Rehearing Denied July 20, 1953.

Marvin E. Frankel, Atty. Department of Justice, Claims Division, Washington, D. C., Donald H. Fraser, Asst. U. S. Atty., Savannah, Ga., Holmes Baldridge, Asst. Atty. Gen., Bernard F. Orlikowski, Atty. Public Housing Administration, Washington, D. C., (J. Saxton Daniel, U. S. Atty., Savannah, Ga., of counsel), for appellant.

Chas. L. Gowen, Brunswick, Ga., (Gowen, Conyers, Fendig & Dickey, Brunswick, Ga., of counsel), for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Brought against Seacoast Gas Company and the surety on it performance bond, the suit was for damages alleged to have resulted from the anticipatory breach by the Gas Company of its contract with plaintiff to supply gas to a federal housing project during the period from April 15, 1947, to June 15, 1948. The claim was: that on October 7, 1947, while performance of the contract was in progress, Seacoast anticipator-

ily breached the contract by writing plaintiff unequivocally that, because of plaintiff's breach of the contract, Seacoast intended to cancel same as of November 15, 1947; that the plaintiff immediately notified Seacoast that it did not recognize any right in it to cease performance and that it proposed to advertise for bids to insure a continued supply of gas if Seacoast's breach persisted; that, thereafter, having advertised for bids and on November 6th, having received the low bid from Trion Company, it on that date notified Seacoast by letter [1] that unless it retracted its repudiation of the contract within three days from the letter date, Trion's bid would be accepted and Seacoast and its surety would be held liable for breach of contract; and that thereafter Seacoast not having retracted within the time fixed, plaintiff on November 10, accepted Trion's bid and, pursuant thereto, began its preparations to execute with Trion a contract for a price in excess of that provided in the Seacoast contract, and Seacoast is liable to plaintiff for this excess.

Defendant Seacoast, admitting in its pleading and its testimony that the facts were substantially as claimed by plaintiff, defended on the ground: that it had retracted its notice of repudiation and given assurance of its intention to continue to perform before the plaintiff had actually signed the new contract; and that, since, as it claimed, plaintiff had not then substantially changed its position or suffered any damages as a result of Seacoast's notice to terminate the contract and cease performance under it, the retraction was timely and healed the breach.

Upon the issue thus joined, the cause was tried to the court without a jury, and the court stating the question for decision thus, "The question in this case is as to whether Seacoast Gas Company, Inc. withdrew its notice of cancellation of its contract prior to the rendering of the contract to the Trion Gas Company, found that it had done so. On the basis of this finding and a further finding that on November 13, two days before the termination date which Seacoast had fixed in its notice, Zell, who was president both of Seacoast and of Trion Company, to whom the new contract was awarded, notified the regional counsel for the Public Housing Authority that Seacoast admitted it had no right to cancel the contract and was rescinding its notice, the court held that the anticipatory breach had been healed and plaintiff could not recover.

Appealing from this judgment, plaintiff is here insisting that under the settled law governing anticipatory breaches not only as it is laid down in Georgia but generally, Seacoast's retraction came too late to heal the breach, and the judgment must be reversed.

Appellees, on their part, insist that the judgment appealed from was soundly based in law and in fact and must be affirmed.

We do not think so. The undisputed facts establish: that Zell, president of both companies, was present at the opening of the new bids on November 6, 1947, and

1. The text of this letter stated:

"As you already are advised, since Mr. Carley Zell was present at the opening of bids, the Government has advertised for bids for supplying all liquified petroleum gas requirements for War Housing Project, VA–44067 at Newport News, Virginia for the period from November 15, 1947, to June 15, 1948. This was made necessary by your notice that you were cancelling your contract for supplying liquified petroleum gas to this project as of November 15, 1947, and would not perform after that date.

Two bids were received pursuant to the advertising hereinbefore mentioned. They are as follows:

| | |
|---|---|
| Modern Fuel and Service Corporation | 16.31¢ per therm Charlotte, North Carolina |
| Trion Gas Service, Incorporated | 15.75¢ per therm Brunswick, Georgia |

This is to notify you that unless we receive from you a written withdrawal of your cancellation notice and assurance of continued performance under your contract to furnish the liquified petroleum gas requirements for War Housing Project VA–44067, Newport News, Virginia, within three days from the date of this notice, we shall proceed to accept the bid of the Trion Gas Service, Incorporated, the low bidder, and hold you and your performance bond obligated for your breach of performance of your contract."

upon being asked to withdraw Seacoast's notice that it would cease performing the contract, refused to do so; that on that date the Public Housing Administration regional counsel wrote Seacoast by registered mail, addressed "Attention Zell", advising of the steps the government had taken and stating that unless Seacoast retracted its repudiation within three days from the date of the letter, Trion's bid would be accepted and Seacoast and its sureties would be held liable for breach of contract; and that having received no response from Seacoast within the three days specified, and Zell again asked on November 10th, to retract the notice of repudiation having refused to do so, the government accepted Trion's bid and proceeded with the execution of the contract. The record standing thus, under settled law [2] not only of Georgia but generally elsewhere, the breach was not healed, the judgment was wrong, and it must be reversed.

A comparison of the briefs and arguments of appellant and appellees will show that the case is in quite small compass. Both agree that Seacoast's letter of October 24th operated as an anticipatory breach and that unless effectively withdrawn during the *locus poenitentiae* it operated to put Seacoast in default and to render it liable for the loss to the government of the difference in price between the old and the new contract.

Appellees, after quoting from Anson on Contracts, 6th Ed. Sec. 385, p. 444:

"The repudiator has the power of retraction prior to any change of position by the other party, but not afterwards."
go on to say:

"So we see that the authorities seem to be unanimous that a person who gives notice of his intention not to perform a contract may withdraw such

notice and offer to perform prior to the time the other party acted or relied thereon."

Based upon these premises, they insist that "the undisputed evidence is that appellant did not 'accept the bid of Trion Gas' until November 17th, which was after the notice of cancellation had been withdrawn in writing."

We think: that this statement is erroneous; that it represents the crucial difference between the parties; and that the error of the statement lies in the fact that it confuses the acceptance of the bid with the signing of the contract.

It is true that the contract was not signed until the 17th, after Seacoast had retracted its notice and if appellees were correct in its position that the date of the signing of the new contract was determinative of this case, they would be correct in their conclusion that the judgment should be affirmed.

But that position is not correct. In fact and in law, when the government took bids and notified Seacoast that unless it retracted within three days it would proceed to accept the Trion bid and award the contract to it, the *locus poenitentiae* ended with these three days. The fact that Seacoast claims that it did not receive the notice is completely immaterial both because it was not necessary for the government to give any notice or fix any time and because Zell, on November 10th, repeated to the Regional Counsel his refusal to retract.

All that is required to close the door to repentance is definite action indicating that the anticipatory breach has been accepted as final, and this requisite can be supplied either by the filing of a suit or a firm declaration, as here, that unless within a fixed time the breach is repudiated, it will be accepted.

2. Baker v. Corbin, 148 Ga. 267, 96 S.E. 428; Bu-Vi-Bar Petroleum Corp. v. Krow, 10 Cir., 40 F.2d 488, 69 A.L.R. 1295; Finch v. Sprague, 117 Wash. 650, 202 P. 257; Parker v. King, 68 Ga.App. 672, 23 S.E.2d 575; Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; United Press Ass'n v. National Newspaper Ass'n, 10 Cir., 237 F. 547; 12 Am. Jur., "Contracts" Sec. 392; Ballantine, Anticipatory Breach and the Enforcement of Contractual Duties, 22 Mich.L. Rev. 329; 17 C.J.S., Contracts, § 472, p. 973; Vold, Withdrawal of Repudiation after Anticipatory Breach of Contract, 5 TexL.Rev. 9, 10; Williston on Contracts (Rev.Ed.1936) Sec. 1323, Vol. 5, pp. 3710–3711

Here, in addition to this firm declaration, the record shows the taking of bids and the awarding of the contract to the lowest bidder. The error of the district judge lies, we think, in holding that the *locus poenitentiae* was extended until the 17th, when the contract was signed, and that Seacoast having repented before the signing of the contract, had healed the breach and restored the contract to its original vitality.

Whatever of doubt there may be, and we have none with respect to this view, as a matter of strict law, there can be none with respect to the justice or equity of this determination when it is considered; that Zell, the president and practically sole owner of Seacoast, was the organizer, the president and practically sole owner of Trion; that he organized Trion for the sole purpose of the bidding; and that on the date the bids were opened and later on the date the contract was awarded, he, though requested to do so, refused to withdraw Seacoast's repudiation and continued in that refusal until a day or two before the contract was signed.

The evidence showing, as it does, without contradiction, that the signing of the contract was not delayed because of a purpose on the part of the government to extend the time for Seacoast's repentance, but because until that date Trion had not furnished his bond, we think it clear that, in entering judgment for the defendants, the court erred. The judgment is, therefore, reversed and the cause is remanded with directions to enter judgment for plaintiff for the loss Seacoast's breach of contract has caused it.