# CHARLESTON.

## SWIGER v. HAYMAN et. al.

Submitted June 6, 1904—Decided October 25, 1904.

1. EXECUTORY CONTRACT.
   A mere declaration, by one of the parties to an executory contract, of an intention not to perform it, which is retracted almost immdiately and before any declaration has been made or act done by the other party in respect to such renunciation, and before injury therefrom has resulted to him or a change in his situation or the condition of the subject matter has occurred, does not constitute a breach, unless, perhaps, in the case of a contract of marriage, or other similar contract, imposing peculiar obligations upon the parties during the time intervening between the making and performance thereof. (p. 127).

2. INTERPLEADER—Suit—Cost.
   On an interpleader, respecting a sum of money in the hands of the plaintiff, occasioned by the fault of one of the defendants, cost out of the fund should be decreed to the plaintiff, and the defendant who is not in fault is entitled to a decree against the other defendant for the costs so taken out of the fund as well as for his own costs. (p. 128).

Appeal from Circuit Court, Harrison County.

Bill by John R. Swiger against N. J. Hayman and others. Decree for plaintiff and defendant Mark appeals. Decree in favor of Hayman and Costor reversed, and decree in favor of Mark entered.

*Reversed.*

DAVIS & DAVIS and JOHN BASSEL, for appellees.

M. G. SPERRY and R. S. DOUGLAS, for appellant.

POFFENBERGER, PRESIDENT:

The vital question presented here is, whether a mere renunciation of an executory contract by one of the parties thereto which is recanted or retracted within a few minutes afterwards, and before any declaration has been made or act done by the other party, in respect to such renunciation, and before any change in the situation of the parties or the subject matter of the contract has taken place, constitutes a breach. of the agreement.

The litigation arose upon the following contract:

"This Agreement, made this 26th day of March, 1901, by and between C. E. Mark, of the first part, and Hayman & Coston, of the second part, all of the county of Harrison and State of West Virginia:

"Witnesseth:—that the said party of the first part has this day bargained and sold unto the parties of the second part, all his stock of groceries and merchandise, now in the Goff Building in the city of Clarksburg, W. Va., on the following terms and conditions, that is to say,—for cash at invoice, plus twenty-five per cent. additional, and this sale is to include all fixtures and appliances used by the said party of the first part, including horse, delivery wagon and harness.

"The invoice of the stock hereby sold is to be made Thursday, March the 28th, 1901, and on the following days if necessary to complete the same.

"And the parties hereto hereby deliver into the hands of John R. Swiger, their checks for the amount of two hundred dollars each, to be held as liquidated damages to either of the parties, in case either of the parties hereto shall retract the sale.

"(Signed), C. E. MARK,        (Seal).
"(Signed), HAYMAN & COSTON, (Seal).
"By NEWELL J. HAYMAN."

Upon the signing of this paper, the checks mentioned therein were made and deposited as therein agreed. This occurred on Tuesday, the 26th day of March, 1901, and, on the second day thereafter, Thursday, the parties began listing the stock of goods. In the evening of that day, after the listing had been completed, or about so, the question of valuation came up, and the purchasers called for the invoices. They were produced on the next morning and the work of inserting the values was taken up. Very soon thereafter, some articles which had been purchased in New York appeared on the list and Mark said ten cents must be added for drayage and an additional amount for freight. To this, Hayman and Coston objected. Thereupon they resorted to a lawyer for his advice as to the meaning of the terms, "at invoice," as used in the contract. This did not result in an agreement and Mark left the room. He says that, before leaving, he proposed an arbitration, and that Hayman said, "We won't do it, we are strangers here and don't want to get the worst of it. We

will settle it by law." Mark says he then went down stairs, and, being advised by a friend to yield, returned in a few minutes and announced his willingness to do so, but that Hayman said, "No, sir, we will settle it by law." Hayman says Mark said, before leaving the room, "We will settle it in court. Get yourself ready"; and that, after going out, he returned in probably ten or fifteen minutes, and said he would yield the freight and drayage and asked them to go over with him and fix it up, to which he (Hayman) replied, "No, Mr. Mark, you have broken your contract and we are not ready for any new one." Coston's testimony is substantially the same as that of Hayman, except that he did not hear what Mark said upon returning to the room. On March 29, 1901, the succeeding day, Mark caused a notice to be served upon Hayman and Coston, making known his readiness to carry out the contract, demanding compliance with its terms on their part and saying he would demand possession of the checks, if they did not comply on that day. This notice they disregarded.

The next step was an action before a justice of the peace, brought by Hayman and Coston against Swiger, the stakeholder, on the same day on which Mark's notice was served upon them. Thereupon Swiger commenced, in the circuit court of Harrison county, a suit in equity, enjoining prosecutions against him, and praying that the contending claimants of the fund in his hands be required to interplead in that suit, concerning the fund in dispute. They did so, with the result that the two checks were delivered over to the clerk, collected, and a decree pronounced directing payment of the entire amount, four hundred dollars, to Hayman and Coston, and from that decree Mark has appealed.

This decree rests upon two theories. First, that there was a repudiation by Mark of the entire contract. Second, that the mere repudiation of it, without any act done or declaration made by Hayman and Coston, or change of condition, released them. As to the first of these two propositions, it is unnecessary to say anything. The unsoundness of the second reverses the decree. The renunciation of the contract by Mark, if there was one, was retracted immediately and before the other parties had announced any purpose or intention in respect to it, and before they were in any way prejudiced by it. The Supreme Court of the

United States in *Smoot* v. *United States,* 15 Wall. 36, and in
*Dingley* v. *Oler,* 117 U. S. 490, has approved the following
statement of the law in Benjamin on Sales (7th Ed.) section
568, as sound: "But a mere assertion that the party will be
unable or will refuse to perform his contract is not sufficient; it
must be a distinct and unequivocal absolute refusal to perform
the promise, and must be treated and acted upon as such by the
party to whom the promise was made; for if he afterwards
continue to urge or demand compliance with the contract, it is
plain that he does not understand it to be at an end." To the
same effect is the text in Hammon on Contracts, section 456.

In *Shaw* v. *Republic Life Ins. Co.,* 69 N. Y. 286, the court
announces the law as follows: "When one of the parties to an
executory contract announces to the other that he will not per-
form, and does not before the time fixed for the performance
of a condition precedent, by the other withdraw his declaration,
such other party is excused from performance, or an offer to per-
form upon his part, and may, when the day has passed for per-
formance by the one who has so declared his purpose, maintain
an action for a breach of the contract." A case in point is
*Traver* v. *Halstead,* 23 Wend. 66, concerning an executory con-
tract for the sale of a farm by Halstead to Traver. Before the
expiration of the time for closing the contract, Traver gave Hal-
stead notice that he would not take and pay for the land, but af-
terwards, on the day appointed for payment, he tendered pay-
ment, whereupon Halstead refused to convey, and the court held
that there was no breach of the contract on the part of Traver.
Cowen, Judge, in delivering the opinion of the court, said: "But
the refusal on the 4th was not conclusive on the plaintiff. He had
a right to change his mind, as he avers that he did, which is not
denied by the plea, and still present himself and offer to perform
on the fifth. This was equivalent to a revocation of what he had
before said, which could not operate as more than a mere license
or excuse to the defendant for not being ready. The refusal did
not discharge the covenant; but we would not allow the
plaintiff thus to play a trick on the defendant. He does not, how-
ever, say he had been thrown off his guard, and that he merely
wanted time therefore. He admits, by not denying, what the
plaintiff avers in his declaration that when he did come, and
tender a performance, the defendant met him with a general re-

fusal; and would not even receive the securities. *Non constat* that he had parted with the title, or taken any steps in consequence of the notice of the day before, so as to be prejudiced by it. If he had, then the plaintiff ought to be estopped from insisting on performance. But he recanted his refusal within the time fixed by the covenant, and the defendant still continued, for aught we hear, on the 5th and up to the time of the recantation in all respects as able to perform as he would have been had the plaintiff said nothing." Much of the doctrine relied upon by the appellees is said to have been declared in *Daniel* v. *Newton,* 114 Mass. 530, not to be sound law, or, rather, not applicable to cases of this kind, but to contracts of marriage, in which there are mutual obligations of relationship to be maintained before the time of performance of the contract, and which are sundered by mere renunciation. That case holds as follows: "An action for the breach of a written agreement to purchase land, brought before the expiration of time given for the purchase, cannot be maintained by proof of the absolute refusal on the defendant's part ever to purchase."

To the possible suggestion that here the recantation did not come before the time for performance, appointed by the contract, the reply is that, unlike a contract for the payment of money, this one cannot be instantaneously performed. To take an invoice, including the ascertainment of values, requires time, and this must have been in the contemplation of the parties. The contract is silent as to the day or hour of the completion of its execution. Nothing more than a slight interruption and delay occurred by reason of the act of Mark, complained of and relied upon as a breach. The other parties took no step whatever in consequence of his renunciation. Their situation was not changed or altered in the least, and they did not signify by word or act what their wishes or purposes were, what interpretation they put upon the language and conduct of Mark, nor what they intended to do, until after he had retracted, and then it was too late.

Under the foregoing principles, the decree in favor of Hayman and Coston must be reversed and, as upon the whole case, it appears that they have failed to comply with their contract, Mark is entitled to his damages, according to the stipulation of the agreement, and also to the money deposited by him to answer for any default on his part. Therefore, it being the duty of this

Court to pronounce such a decree as the circuit court should have entered, the decree complained of will be reversed and a decree entered, directing the payment to Mark of said sum of four hundrd dollars, less costs to the plaintiff up until the time of the payment of said sum into court, which are decreed to him out of the fund, and requiring the appellees, Hayman and Coston to pay to the appellant Mark his costs in the circuit court as well as his costs in this Court, and also to the said Mark the costs of the plaintiff aforesaid, so as to reimburse him to the extent of the deduction from the fund in court for said purpose. 11 Ency. Pl. & Pr. 475; *Aldridge* v. *Mesner,* 6 Ves. Jr. 418; *Beers* v. *Spooner,* 9 Leigh 153.

*Reversed.*