## SAYE v. GARRARD. (No. 1965.)

(Court of Civil Appeals of Texas. Texarkana. May 8, 1918. Rehearing Denied May 30, 1918.)

1. CONTRACTS ⬤⟹116(1) — LEGALITY — CONTRACTS IN RESTRAINT OF TRADE.

A contract whose main purpose, considered with circumstances and conditions giving rise to its execution, or whose necessary result was the establishing of a combination or trust, is unenforceable.

2. CONTRACTS ⬤⟹141(3) — LEGALITY — CONTRACTS IN RESTRAINT OF TRADE—EVIDENCE.

Evidence held to support finding that contract of sale of business and good will with agreement not to re-engage in the same business

in same town while purchaser was in that business therein was not illegal as a combination or trust.

3. GOOD WILL ⊛⇒7—SALE—BREACH—MEASURE OF DAMAGES.

Where defendant sold a business and good will with agreement not to re-engage in such business and broke the contract, buyer could recover profits of which he was thereby deprived upon evidence as to the amount of such profits.

Appeal from District Court, Delta County; Wm. Pierson, Judge.

Action by J. D. Garrard against Sam Saye. Judgment for plaintiff, and defendant appeals. Affirmed.

The action is by appellee against appellant for damages for the breach of a contract of sale of personal property, and for a restraining order. And in accordance with the special answers of the jury the court entered judgment for the appellee. The petition alleged that on the 15th day of October, 1915, the plaintiff, who was a furniture dealer, purchased of the defendant, also a furniture dealer, his entire stock of furniture and fixtures, with the provision in the contract of sale for the defendant's influence and good will, and that the defendant would not re-engage in that business in Cooper, Tex., so long as the plaintiff was engaged in such business. The petition further alleged that the defendant violated his contract and resumed the business, to the plaintiff's damage. The defendant answered by general denial, and specially that the plaintiff and Smith Bros., for the purpose of increasing the price of furniture in the town of Cooper, and in order to lessen competition in said town of Cooper, did act together and combine their capital for the purchase of the stock of furniture then owned by the defendant, and that by reason of the combination and acts upon the part of the plaintiff and Smith Bros. the contract entered into between plaintiff and defendant was contrary to public policy and inhibited by the anti-trust laws of Texas, and was therefore null and void.

In the year 1915 there were three furniture stores in Cooper, a town of about 2,000 people. The three stores were separately and independently owned, respectively, by appellant, the appellee, and Smith Bros. On October 15, 1915, the appellant made a sale of his stock of furniture. According to the evidence of appellee, the appellant, Saye, came to his place of business and stated to him that he was losing money and had the blues and wanted to sell his stock and go out of business in Cooper. Appellee, as he says, "asked him what he would take for the stock, and he told me if I would take his fixtures, pay the rent on the building to January 1st, take the warehouse fixtures and the stock, he would take 75 cents on the dollar for everything. I told him if I could get Smith to take part of the stock off my hands I might take it off his hands. He said, 'If you and Smith will buy me out—you buy me out—two furniture stores can make a little money here, but three can't. So, if you fellows buy me out, I will never come back any more.' I called Mr. Smith over the telephone that night, and told him the proposition, and he said he would see if he could get the money. The next week following I closed the deal with Mr. Saye and bought everything he had. After I bought Mr. Saye's stock I sold Smith Bros. 40 per cent. of it. * * * I did not enter into any kind of secret agreement with Smith Bros. in the purchase of this stock of goods by reason of which we would fix the price of furniture. No effort was made then or at any other time between me and Smith to try to fix the price of furniture; the only understanding we had was in the presence of witnesses that he was to go over there and pick 40 per cent. of the stock at invoice price. Smith agreed to take off my hands 40 per cent. of the stock if I would allow him to pick what he wanted, and he did that. I paid Saye for the whole thing, and Smith paid me."

On cross-examination the appellee said:

"It was agreed before I traded with Saye that Smith was to take part of the stock; and I would not have bought the stock if Mr. Smith had not agreed to take part of it. I wanted Saye out of business as bad as he wanted to go out. I wanted to lessen the number of furniture stores in Cooper. I wanted him out of competition with me and Smith Bros. It left me and Smith Bros. the only furniture dealers in Cooper. It would be a pretty good thing to lessen the number of stores in Cooper is the reason we bought him out. Smith Bros. were to take part, and I was to take part. The special cause and the controlling inducement in buying this stock was to get Mr. Saye out of business. I myself could handle all the furniture needed in this territory. I bought Saye out, made an invoice, and closed up the store he had been occupying. Smith took part of the goods and carried them down and mingled with his. He was doing business in a separate place from where I was. I took the part of the stock that remained and carried them to my store. I used the store Saye had occupied as a warehouse."

W. H. Smith testified:

"During the fall of 1915 I bought a portion of the Saye stock from John Garrard. I had no kind of contract with Saye. At the time I bought a portion of that stock I didn't even know what Garrard was going to pay Saye for the goods. As to how I came to be in negotiation about buying any of this stock of goods, Mr. Garrard mentioned the fact to me that if he bought it he wanted to know if I would take a certain per cent. of it. I never had any character of contract with Saye. There was not any conversation between me and Garrard relative to controlling the sale of furniture or fixing any price on goods in that line. * * * The stuff I bought I absolutely needed and would have had to have bought. I only bought what I needed, and didn't take any stuff but what I did need and would have had to have bought anyway."

Appellant testified in respect to the contract:

"Appellee said to me, 'You wouldn't sell that stock, would you?' and I said, 'Yes; I would sell.' He said, 'What will you take?' and I said, 'I will take six bits on the dollar for it.' He says, 'Well, I will see Smith and see if he will take one-half of it, and if he will we will buy it.' Tuesday evening he came over there and sat down in front of the store. Mr. Smith came walking across the way going home, and he called Smith over there and told him he would take it, and Smith says, 'Well, we will come back after supper and put up a forfeit.'

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

We put up a forfeit. I did not say I would not go back in business. * * * On the purchase price Garrard issued me a check for $1,-900, and Smith's check to Garrard was $2,347.-42, which Garrard indorsed and turned over to me. The stock invoiced between $5,700 and $5,800, and Mr. Garrard told me Mr. Smith was to take 40 or 45 per cent. of it."

The jury made the findings, which are here adopted: (1) That the plaintiff and Herbert Smith did not jointly agree that the stock of furniture owned by appellant should be purchased by them, and did not agree that each would contribute to such purchase in order to prevent or lessen competition in the sale of furniture in Cooper; (2) that in the sale of the stock of furniture to plaintiff Garrard the appellant, as a .part of the contract and as an inducement to cause the plaintiff, Garrard, to buy the stock, agreed not to again enter into the business in Cooper; (3) that the defendant breached the contract by again entering into the business in Cooper; and (4) that the plaintiff sustained damages as a direct result of the breach in the sum of $250.

James Patteson, of Cooper, and A. P. Park, of Paris, for appellant. Newman Phillips and C. C. McKinney, both of Cooper, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The main purpose of the contract furnishes the standard by which the validity of agreements of the kind in suit may be determined, according to the tests laid down. Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079. And if the contract, when considered in connection with the circumstances under which it was made and the conditions that give rise to its execution, is found to have the obvious purpose and necessary result of establishing a "combination" or "trust," then the contract is unenforceable. Robinson v. Levermann, 175 S. W. 160. But if the contract, when considered in connection with the circumstances under which it was made and that give rise to its execution, be found to be one in which the real purpose is not to constitute the transaction a "combination" or "trust," then the statute is not contravened. Malakoff Gin Co. v. Riddlesperger, 133 S. W. 519. And under the evidence in the instant case the real purpose of the sale and purchase is not, it is believed, so obvious and free of uncertainty as to justify the court in withdrawing the issue from ·the jury. For in one view of the evidence it may be said to appear in point of fact there was a "combination" or union within the meaning of the statute. But in another view of the evidence it may be said that the real intent and purpose of the plaintiff and Smith Bros. was for the plaintiff to purchase· the appellant's stock and then resell a selected portion of it to Smith Bros. And since the jury, in their province, have made a finding of fact, with evidence in the·record to support it, that the

plaintiff and Herbert Smith did not jointly agree or combine to purchase the stock, the case of Gin Co., supra, .it is thought, 'rules the case. The first, fourth, and fifth assignments of error are overruled.

[3] If the appellant by breach of the alleged contract destroyed the profits which the evidence shows would probably have in some part accrued to the plaintiff from the contract, then the plaintiff in this case may recover such damages as the jury may determine. Profits of which a person has been deprived by the fault of another may form a base for a claim of damages. Norris Lumber Co. v. Harris, 177 S. W. at page 517.

The judgment is affirmed.