[No. 34539. Department Two. January 2, 1959.]

H. R. FISCHNALLER et al., Appellants, v. SAM R. SUMNER et al., Defendants, THE NATIONAL BANK OF COMMERCE OF SEATTLE, as Executor of the Estate of E. D. GENSINGER, Deceased, Respondent.[1]

[1]Reported in 333 P. (2d) 636.

*Kimball & Clark* and *Murray & Hanna*, for appellants.

*Hughes & Jeffers*, for respondents.

ROSELLINI, J.—This action was instituted by the plaintiffs, holders of an option to lease certain real property in East Wenatchee, Douglas county, Washington, to recover damages from the defendants for tortious interference with the performance of the lease agreement contained in the option. It was the contention of the plaintiffs that they exercised their option but that the defendants induced the optionor to fail and refuse to give a lease.

At the close of the plaintiffs' case, the defendants Sumner were dismissed as parties, and to the court's ruling in this regard, no error is assigned. After all the evidence was

taken, the court ruled favorably on the motion of the defendants Gensinger (who will be referred to herein as though they were the sole defendants) for a dismissal of the suit for want of sufficient evidence to sustain the plaintiffs' cause of action. Error is assigned to this ruling and to the denial of the plaintiffs' motion for a new trial.

The evidence of the plaintiffs showed that they secured an option to lease a tract of land to be used as a shopping center. The option provided that it could be exercised only by a corporation to be formed later and to be known as the Wenatchee Eastgate Company. This corporation was never formed, and although the evidence showed the plaintiffs to be the promoters of the proposed corporation, there was no showing that they were to be the purchasers of all or any of its stock.

The defendants, in the meantime, had acquired adjoining land from the optionor and desired to acquire the land optioned to the plaintiffs for the erection thereon of a supermarket. The optionor, however, although he was advised that the plaintiffs would probably not be able to finance their proposed project, refused to discuss the leasing of this land to the defendants, once the plaintiffs had exercised, or attempted to exercise, their option, which they did by giving notice of election and paying the first month's rental.

The optionor was at that time represented by Mr. Sumner, a Wenatchee attorney, who, it was understood between the parties, was to draw the lease, which was to cover a period of forty-nine years with an option to renew for fifty years. Many of the terms were left open to future agreement, as Mr. Sumner was not familiar with the provisions which are required or desirable in a lease covering such a long term. The optionor, with his consent, engaged another attorney, a Mr. Hensel of Waterville, to draft the instrument.

There was no provision in the option making time of the essence of the agreement or setting a deadline for the submission of the proposed lease to the plaintiffs.

After giving notice of their election to exercise the option, on November 30, 1954, the plaintiffs began to contact pros-

pective tenants and to negotiate for financing of the project. They secured a tentative commitment for the erection of a supermarket and other contingent commitments, and also determined that the Washington Mortgage Company would provide a loan of $86,000 if the remaining $100,000 which was required to erect the buildings could be obtained from other sources. The manner in which the plaintiffs proposed to raise this remaining $100,000 is not revealed by the record.

In the meantime the preparation of the lease was not completed, and at one time Mr. Sumner notified the plaintiffs that a lease would not be executed until they showed the optionor some evidence that they would be able to finance the construction of the shopping center. In the meantime, the monthly rentals were not paid. The plaintiff Harold C. Knight left the state in February, 1955, and did not return until the following fall. While previous to that date, several requests for the proposed lease had been made, nothing was done thereafter until April 6th, when the plaintiffs, through their attorney, notified Mr. Sumner that unless a lease was submitted to them in three days, they would be compelled to take whatever steps they deemed proper to enforce their agreement. With the letter, a check covering the past due four months' rental was enclosed.

In reply to this demand, on April 11, 1955, Mr. Sumner returned the check, with the following explanation:

"Your letter stated that the lease referred to was to be delivered by April 9, 1955; and if not, steps would be taken by your clients along whatever line would be proper. I am returning the check to you with the advice that the lease has not been prepared, and your action now in my judgment will preclude it being prepared."

The lease had, in fact, been in preparation by Mr. Hensel, who submitted it to plaintiffs' counsel within a few days after this letter was written by Mr. Sumner. Plaintiffs' counsel refused to consider the proposed lease, however, stating that the plaintiffs considered the agreement to be at an end. One of the plaintiffs never saw the proposed lease,

and the other refused to read it because, in his judgment, it was too long.

Sometime thereafter, the plaintiffs brought a suit against the optionor. The final disposition of this suit is not revealed by the record. The optionor offered to discuss a settlement with the plaintiffs in the summer of 1955, but this was rejected, on the ground that the plaintiffs were no longer interested. After receiving this advice, the optionor leased the land in question to the defendants, who proceeded to erect a supermarket on the land as a part of their shopping area.

The trial court held the evidence insufficient to show that the plaintiffs had been damaged in any amount, since the option was to be exercised by, and the lease was to be given to, a corporation which never came into existence, and which the plaintiffs had not shown they were capable of financing. Most significantly, the plaintiffs failed to show what amount of stock, if any, they were prepared to purchase.

■ We need not consider the correctness of the trial court's theory in order to uphold its decision. It is plain that the contract in question was not breached by the optionor, or, if it was, that the breach was cured. There is no suggestion that the failure to deliver a proposed draft on the day set by the plaintiffs constituted a breach of the contract, nor could this be successfully contended when it appears that they were in default in the payment of rent and in having failed to incorporate.

■■ The plaintiff's theory is that Mr. Sumner's letter of April 11th, relieving them of any further liability under the contract, constituted a repudiation of the defendant's undertaking. They also contend that the repudiation could not be withdrawn, but this is not the rule, and they cite no authority so holding. It is true that once a contract has been repudiated, the repudiation may not be withdrawn after the other party has brought suit or otherwise changed his position so as to make performance more burdensome. *Finch v. Sprague*, 117 Wash. 650, 202 Pac. 257. But there is nothing in the record to show that the plaintiffs' position was

changed in any way between the day that they demanded that the optionor provide a lease and the day that one was submitted to them. Suit was not instituted until more than two months thereafter. No explanation is offered of why they expressed their determination to carry out the contract on one day and yet, less than a week later, declared that they were no longer interested. There is no showing that in the interim they lost their opportunity to finance the project or the assurance of prospective tenants, or that there was anything which they could have done in furtherance of the contract on April 9th, but could not have done a week later.

The rule is well established that where a party has repudiated a contract, even after an actual breach if that breach is not material, the repudiation being before the time for full performance has arrived, this repudiation can be withdrawn unless the other party, before the withdrawal, has manifested an election to rescind the contract or materially changed his position in reliance on the repudiation. *Swiger v. Hayman*, 56 W. Va. 123, 48 S. E. 839; 1 Restatement, Contracts, 481, § 319; 12 Am. Jur. 976, § 398; 5 Williston on Contracts, 3750, § 1335; and see *Finch v. Sprague, supra.*

Assuming, as the plaintiffs contend, that the attorney's letter of April 11th, amounted to a repudiation of the optionor's contractual undertaking, that repudiation was effectively nullified when, before the plaintiffs had in any way changed their position, the optionor manifested his willingness to proceed with the contract by presenting a proposed lease. No objection was made to the terms of the proposed lease, nor was it objected that it did not comply with the provisions of the option agreement.

Since the optionor did not repudiate his contract with the plaintiffs, but on the contrary expressed his willingness to go forward with it, the loss, if any, which the plaintiffs sustained was due to their own unwillingness to assume the burdens of the contract. This being the case, it cannot be successfully contended that the defendants in-

338

duced the optionor to repudiate his contract to the plaintiffs' damage.

The judgment is affirmed.

HILL, C. J., MALLERY, WEAVER, and FOSTER, JJ., concur.

[1]Reported in 333 P. (2d) 639.