ARABESQUE STUDIOS, INC., Appellant,

v.

ACADEMY OF FINE ARTS INTERNATIONAL, INC., and Sarasue Harris, Appellees.

No. 18641.

Court of Civil Appeals of Texas, Dallas.

Sept. 18, 1975.

Rehearing Denied Oct. 16, 1975.

James K. Peden, III, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Tom Thomas, Kolodey & Thomas, A. James Henry, III, Nelson & Dilts, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Arabesque Studios, Inc. appeals from a take-nothing judgment, rendered *non obstante veredicto* in its action against Academy of Fine Arts International, Inc. and Sarasue Harris for damages arising out of a breach of an employment contract between Arabesque and Sarasue Harris. We affirm the judgment as to International and reverse and render judgment in favor of Arabesque against Sarasue Harris.

Arabesque, at all times material herein, was engaged in the business of providing dance instruction, primarily for children, at three dance studios located in the Dallas area. On January 20, 1971, Arabesque entered into an employment contract with Harris in which she agreed to serve in the capacity of a manager-teacher in the Arabesque studio located in Richardson, Texas. The written contract of employment provided that the employee would not, for a period of twelve months after the date of ter-

mination of employment, engage in the same or similar business, in any capacity within a five-mile radius of any location where the employer operated a business. The contract also contained the following provision:

Employee shall not at any time within twelve (12) months following termination of employment teach any current customer or client of the employer, nor teach any person who has been a customer of the employer within twelve (12) months prior to such termination.

Harris performed services for Arabesque under the terms of this contract until May 22, 1972, when she resigned. In September 1972, she began providing dance instruction at a studio operating under the name of Academy of Fine Arts International, Inc., which was located within five miles of the Arabesque Richardson studio. Academy of Fine Arts was a sole proprietorship of Mr. A. R. Fairchild. In November 1972, Academy of Fine Arts International, Inc. was incorporated; fifty-one percent of the stock was owned by Mr. and Mrs. Joe Taylor, and the remainder of the stock was owned by Harris.

Arabesque brought this action against both Academy and Harris, alleging that it had been damaged as a result of Harris's breach of the non-competition covenant in her contract in that she had taken away Arabesque's students and trade secrets and had caused irreparable damage to its goodwill. Arabesque sought damages against Academy on the theory that Harris was its agent, servant or employee and, therefore, it was legally responsible for her conduct.

Both in her brief and before this court in oral argument, Harris agreed that her actions and conduct constitute a breach of the restrictive covenant contained in the contract with Arabesque. No question is presented concerning the reasonableness and enforceability of the restrictive provisions. In fact, the trial court granted Arabesque's motion for partial instructed ver-

dict as to the liability of Harris. No attack is made upon this act of the court.

The case was tried before the court and a jury. In response to special issues, the jury found, *inter alia,* that within twelve months after the date her employment with Arabesque terminated, Harris taught students at Academy who, within the twelve-month period prior to her termination, were customers of Arabesque; that Academy, at the time it was formed as a corporation in November 1972, had knowledge of Harris's contract with Arabesque; and that $4,400 would fairly and reasonably compensate Arabesque for its damages resulting from the occurrence in question. Academy filed a motion for judgment *non obstante veredicto,* contending that there was no evidence to support the answer of the jury to special issue number five concerning its knowledge of the contract between Arabesque and Harris. As further grounds for its motion, Academy attacked the answer of the jury to special issue number six concerning the amount of damages, asserting that the answer was not supported by the evidence. Harris also filed a motion in which she contended that the answer of the jury to special issue number six should be disregarded because it is not supported by any evidence. The trial court sustained both motions and rendered final judgment, decreeing that Arabesque take nothing against either Academy or Harris.

Two questions are presented: (1) Is Academy liable for damages; and (2) does the record contain any evidence to sustain the jury's finding of damages in the sum of $4,400.

■ Our appellate review and resolution of these questions is necessarily governed by well-established rules relating to the validity *vel non* of a judgment rendered *non obstante veredicto.* It is elementary that in order to sustain the action of the trial court in granting such a judgment, it must be determined that there is "no evidence" of probative force upon which the jury could have made the findings relied upon by appellant Arabesque. The point presented is one of "no evidence," and our determination of the question is controlled by the following rule: An issue of fact is raised if, discarding all adverse evidence, giving credence to all evidence favorable to the party opposing the motion, and indulging every legitimate conclusion favoring that party, the jury might have found in favor of that party. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547 (1962); *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273 (1958); *Shelton v. Belknap,* 155 Tex. 37, 282 S.W.2d 682 (1955); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194 (1952); and *Franklin v. Safeway Stores, Inc.,* 504 S.W.2d 514 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.).

### Liability of Academy

In the trial court appellant Arabesque asserted two theories to predicate liability upon Academy. It first contended that Harris was acting as the agent of Academy. They state that there was a continuing breach of contract by Harris and that Academy participated in that breach after the date of its incorporation. The jury, in answer to special issue number five, found that Academy, at the time it was formed in November 1972, had knowledge of Harris's contract with Arabesque. It is upon this finding that Arabesque relies to cast liability upon Academy. We cannot agree.

■ The record is undisputed that in May 1972, Harris voluntarily left the employment of Arabesque and admittedly breached the contract with that company. In September she began to render services in competition with Arabesque for a sole proprietorship operating under the name of Academy. Appellee Academy was not incorporated until November 1972. Admittedly, there is no privity of contract between Academy and Arabesque. Furthermore, there is no evidence that Academy ratified or confirmed Harris's admitted breach of the agreement with Arabesque. Therefore, Academy cannot legally be held

liable on a breach of contract theory. *House v. Houston Waterworks Co.*, 88 Tex. 233, 238, 31 S.W. 179 (1895); *Jones v. George*, 61 Tex. 345, 364 (1884); *Moore v. Sussdorf*, 421 S.W.2d 460, 466 (Tex.Civ.App. —Tyler 1967, writ ref'd n. r. e.).

■■ Arabesque argues that since Harris's restrictive covenant continued for a fixed period, each day of her employment by Academy must be taken as a new breach in which Academy participated. There is no evidence, however, that any officer or agent of Academy, other than Harris herself, was aware of such a continuing breach of contract. The knowledge of an agent cannot be imputed to a principal if the agent has a personal adverse interest in not revealing it. *Goldstein v. Union National Bank*, 109 Tex. 555, 213 S.W. 584 (1919). The corporation, representing the interests of those who invested their money in it, cannot be charged with knowledge of facts that she had a personal interest in not revealing.

■ Arabesque also alleged a cause of action in tort based upon Academy's alleged wrongful interference with Harris's contractual obligations to Arabesque. There was no jury issue submitted, and, therefore, no finding that Academy knowingly induced Harris to breach her contract thereby damaging appellant. To hold Academy liable for interference with the contractual relationship between Harris and Arabesque, it was incumbent upon Arabesque to demonstrate that Academy actually caused or brought about the interference. It is not enough that Academy merely reaped the advantages of a broken contract after the contracting party had withdrawn from the commitment on his own volition. *Snowden v. Sorensen*, 246 Minn. 526, 75 N.W.2d 795, 799–800 (1956); *Wolf v. Perry*, 65 N.M. 457, 339 P.2d 679, 681–82 (1959); *Emery v. A & B Commercial Finishing Co.*, 315 P.2d 950, 952–53 (Okl.1957); *see Fischnaller v. Sumner*, 53 Wash.2d 332, 333 P.2d 636, 639 (1959). The employee's breach of his own contract with Arabesque is, of course, not a basis for the tort of Academy. *See Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800 (1903); *Frost National Bank v. Alamo National Bank*, 421 S.W.2d 153, 156 (Tex. Civ.App.—San Antonio 1967, writ ref'd n. r. e.); *Davis v. Freeman*, 347 S.W.2d 650, 654 (Tex.Civ.App.—Dallas 1961, no writ). We find no legal basis for tort liability against Academy. The trial court correctly sustained the motion for judgment *non obstante veredicto* in favor of Academy.

### The Issue of Damages Against Sarasue Harris

Since appellee Harris has admitted liability to Arabesque for her breach of the contract, the only question is whether there is any evidence of probative force to support the jury's finding that the damages reasonably sustained by Arabesque are the sum of $4,400. The question of insufficiency of the evidence to support the jury's answer to this finding and the question of excessiveness of the verdict are not presented to us by crosspoints of error by appellee Harris. In resolving the question of "no evidence," we look only to the testimony favorable to the jury's verdict, and having done so we are of the opinion that the record does contain evidence of probative force to support the jury's finding on damages.

■ Wanda Ingels, vice-president of Arabesque, testified that of the total number of students enrolled at the Arabesque studio in May 1972, 181 failed to return in September 1972. She testified that tuition for a single course of instruction at Arabesque is $110 for a forty-week year but that students were encouraged to take more than one series of lessons, with discounts being offered for additional lessons. A second series of lessons in the same semester is forty-five dollars for a twenty-week semester, and a third series of lessons is thirty-five dollars for a twenty-week semester. Of the 181 students who failed to return to Arabesque, thirty-eight were discovered to be students at Academy. This was ascertained from the names of those listed in Acade-

my's recital program for June 1973. She stated further that some of the names appeared on the program more than once, indicating that those students were taking more than one lesson a week. From this information, Mrs. Ingels estimated that Arabesque's former students were taking seventy-three student hours of instruction at Academy and that these lessons would have netted approximately $6,400 to Arabesque studios had these students returned for continued instruction. She also testified that, in addition to the instruction fees, Arabesque would have sold to those students supplies in an amount of approximately $2,300, of which $600 would have been profit. She said, finally, that had the thirty-eight students remained at Arabesque, they would have been taught in existing classes, causing no increase in overhead expense.

Mr. Jerome C. Ingels, president of Arabesque, prepared a chart comparing the financial growth of the Arabesque studio located in Preston Royal to their Richardson studio. While these two geographical areas were similar in terms of population and income within the market, Mr. Ingles determined that gross income to the Richardson studio was $14,000 less than that of the Preston Royal studio during the time material to this litigation.

Harris testified that about thirty-two of her former students at Arabesque left Arabesque to attend Academy, where she had instructed them. Mr. Joe Taylor, secretary-treasurer of Academy testified that his company's income during November and December 1972, was $2,521.83 and from January to June 1973, was $10,833.63 or a total of $13,355.46.

 The courts have recognized the problem of ascertaining damages in cases involving the breach of non-competition contracts. Because of the very nature of these cases, it is seldom possible to establish with complete mathematical accuracy the damages resulting to plaintiff. While courts do not permit an award of damages based upon mere speculation or conjecture,

they do not go so far as to require that there be a mathematical exactness of the amount of damages. *Hindman v. Texas Lime Co.*, 157 Tex. 592, 305 S.W.2d 947 (1957); *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938); *Galveston, H. & S. A. Ry. v. De Groff*, 102 Tex. 433, 118 S.W. 134 (1909). If an employee breaches his contract, it is proper for the jury to consider profits made by the subsequent employer of the defendant inasmuch as these profits may have, in some part, accrued to plaintiff in the absence of the breach. *Welsh v. Morris*, 81 Tex. 159, 16 S.W. 744, 745 (1891); *Saye v. Garrard*, 204 S.W. 684, 686 (Tex.Civ.App.—Texarkana 1918, writ ref'd).

In this case Arabesque presented evidence that possibly thirty-eight, and admittedly thirty-two, of its former students left the Richardson studio at the time Harris left its employment and went with her to the Academy studio. Harris admitted that she violated the contract of employment by teaching these former students of Arabesque at Academy. The jury was certainly entitled to take into consideration the amount of fees that Arabesque would have made had these students remained. The jury could infer that had Harris remained at Arabesque the students would not have attended Academy. In addition, the jury was entitled to consider the divergent profits which occurred between the Preston Royal and Richardson studios. While the evidence of damages was not subject to mathematical exactness, we think that it was adequate to enable the jury to make a fair and reasonable approximation of damages. *See Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800 (1903); *Southern Properties, Inc. v. Carpenter*, 50 S.W.2d 876, 878 (Tex.Civ.App.—Dallas 1932, writ ref'd).

 All of the cases relied upon by appellee Harris deal with the question of sufficiency of the evidence to support jury verdicts in cases of a similar nature. None of these cases deal with the question of "no evidence" following judgment *non obstante*

*veredicto*, as in the present suit. We conclude, from a review of the evidence presented, that there was some evidence of probative value to support not only the submission of the damage issue to the jury but also the jury's answer thereto. This being true, the trial court was not legally authorized to render judgment *non obstante veredicto* for Harris, and such judgment must be reversed.

### Judgment

1. The judgment of the trial court denying recovery against Academy is affirmed.

2. The judgment of the trial court denying recovery by Arabesque against Harris, rendered *non obstante veredicto*, is reversed. Harris has not brought forward any crosspoints of error complaining of the excessiveness of the jury's verdict, nor does she by crosspoints request that we reverse and remand the case because of the insufficiency of the evidence to support the jury's answer to the special issue on damages. *R. G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d 733, 741 (Tex.Civ. App.—Dallas 1972, writ ref'd n. r. e.). Therefore, this court must render that judgment which the trial court should have rendered. Accordingly, the judgment of the trial court is reversed, and judgment is now rendered that Arabesque Studio, Inc. do have and recover of and from Sarasue Harris the sum of $4,400, together with interest thereon at the rate of six percent per annum from January 17, 1975, the date of judgment. It is further ordered that all costs be assessed against appellee Sarasue Harris, for all of which let execution issue.

Affirmed in part and reversed and rendered in part.