**Affirmed and Opinion Filed June 8, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01359-CV**

**HELEN CULLEN AUSTIN, Appellant**

**V.**

**MICHAEL W. MITCHELL, INDIVIDUALLY, AND DANIEL MITCHELL, AS TRUSTEE OF THE BRITTANY MITCHELL TRUST FBO CAITLIN MITCHELL AND AS TRUSTEE OF THE BRITTANY MITCHELL TRUST FBO MEGAN MITCHELL, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-13917**

## MEMORANDUM OPINION

Before Justices Myers, Nowell, and Goldstein[1]
Opinion by Justice Nowell

This is an appeal from a summary judgment in a fraudulent transfer suit between former spouses. Helen Cullen Austin filed suit alleging her ex-husband, Michael W. Mitchell, fraudulently transferred a portion of his limited partnership interest in a family limited partnership to a trust for the benefit of his children.

---

[1] The Honorable Justice Bonnie Goldstein succeeded the Honorable Justice David Evans, a member of the original panel. Justice Goldstein has reviewed the briefs and the record before the Court.

Mitchell defended on the ground that the claims are barred by the repose provision of the uniform fraudulent transfer act. TEX. BUS. & COM. CODE § 24.010. Austin counters that Mitchell is estopped from relying on time-based defenses because he failed to disclose the transfer in his answers to interrogatories. She also claims that knowledge of the transfer from Mitchell's deposition testimony cannot be imputed to her because her attorney at the time had divided loyalties. The trial court granted summary judgment in favor of Mitchell. We affirm.

### Background

Austin and Mitchell are former spouses. During their marriage, Mitchell established the Cullen-Mitchell Family Limited Partnership (FLP). Austin held a 49.5% limited partnership interest and Mitchell held a 49.5% limited partnership interest and a 1% general partnership interest. Austin filed for divorce in 2007.

On March 14, 2008, Austin and Mitchell entered into a settlement agreement regarding the division of their property in the divorce. They agreed Austin would receive a series of payments from Mitchell and Mitchell would receive the entire partnership interest in the FLP.

After the settlement, Mitchell signed a trust document on April 7, 2008, which created a trust for the benefit of his three children[2] effective January 1, 2008. Mitchell named his brother, Daniel, trustee of the trust. On April 7, 2008, he wrote

---

[2] Mitchell has two children by a prior marriage. Austin is the mother of his third child.

three checks totaling $7,500 to fund the trust. The checks were written on an account in Mitchell's sole name. According to the settlement agreement, Mitchell was awarded all accounts in his sole name not specifically awarded to Austin.

The parties tried the issues regarding conservatorship of their child to the court on April 9 and 10, 2008. After several additional hearings, the court signed a Final Decree of Divorce on January 8, 2009, which included the terms of the settlement agreement. Mitchell appealed from the Final Decree of Divorce. While the appeal was pending, the parties reached a settlement on January 18, 2010. They returned to the trial court, which signed an Amended Agreed Final Decree of Divorce on June 21, 2010. The Amended Decree provided for a series of payments from Mitchell to Austin over a period of eight-and-a-half years. It also provided for arbitration of financial disputes between the parties. Austin later obtained an arbitration award and judgment against Mitchell in the amount of $51,847.33 on December 14, 2010.

On January 6, 2011, Mitchell assigned 81% of his partnership interest in the FLP to the trustee for the benefit of the beneficiaries. The assignment was effective January 1, 2011. After the assignment, Mitchell owned 17% as a limited partner and 1% as a general partner in the FLP.

On February 16, 2011, Mitchell answered post-judgment interrogatories served by Austin. In response to a question about whether he "conveyed or disposed of any property, by sale, gift, or otherwise, in the past two years," Mitchell answered

"No." According to his affidavit in support of the motion for summary judgment in this case, Mitchell interpreted the interrogatories as seeking information about transfers during the previous two calendar years.

A few months later, on October 29, 2012, Austin's attorney, Tab Lawhorn, took Mitchell's deposition. Mitchell testified that he owned a 17% limited partnership interest and a 1% general partnership interest in the FLP, his brother, Daniel, owned a 1% limited partnership interest, and the trust owned the remainder of the limited partnership interest. Austin contends she was not informed of this information until a few months before her response to the motion for summary judgment.

On October 10, 2017, Austin filed this suit alleging Mitchell fraudulently transferred a portion of his partnership interest in the FLP to the trust for his children. Austin later joined Daniel Mitchell as trustee of the trust and added claims for disgorgement of trust assets and accounting by a trustee. Austin alleged that Mitchell's assignment of 81% of his limited partnership interest in the FLP to the trustee, effective January 1, 2011, was a fraudulent transfer. She alleged that she did not learn of the existence of the trust until June 5, 2017. Her disgorgement claim asserted that the $7,500 Mitchell paid to fund the trust on April 7, 2008 was made during their marriage with community funds. She also alleged the trust was used as Mitchell's alter ego to hide marital assets from her. She claimed she was an

interested person under the trust code and entitled to seek an accounting from the trustee.

The defendants moved for summary judgment on May 2, 2018. They alleged Austin's fraudulent transfer claims were barred by the statute of repose in the uniform fraudulent transfers act, which requires suit to be filed within four years of the transfer or within one year of discovery of the transfer. *See* TEX. BUS. & COM. CODE § 24.010(a)(1). They also alleged that Austin did not have standing to sue the trustee for disgorgement and an accounting. The trial court granted summary judgment that Austin take nothing from appellees. Austin timely filed this appeal.

## Standard of Review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**Discussion**

**A. Statute of Repose**

Austin argues in her second issue that Mitchell is estopped from asserting the fraudulent transfer act's statute of repose.[3] She argues in her third issue there is a genuine issue of material fact concerning her prior attorney's divided loyalty, which precludes imputation of the attorney's knowledge of the transfer to her.

Austin alleged in her live petition that the transfer of Mitchell's partnership interest to the trust was fraudulent because it was made:

- without fair consideration and Mitchell was left insolvent as a result, BUS. & COM. § 24.006(a);
- with the actual intent to hinder, delay, or defraud Austin, *id*. § 24.005(a)(1); or
- without receiving reasonably equivalent value at a time when Mitchell believed or should have believed his debt to Austin was beyond his ability to pay as payments became due, *id*. § 24.005(a)(2)(B).

Section 24.010 provides that a cause of action with respect to a fraudulent transfer "is extinguished" unless action is brought:

(1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

---

[3] The parties have not expressly addressed whether estoppel applies to a statute of repose, given its absolute nature, as opposed to a statute of limitations. *See Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 860 (Tex. App.—Dallas 2007, no pet.) (finding no published Texas case addressing whether estoppel can be asserted against statute of repose, but not reaching issue because appellant failed to raise fact issue on each element even if it applies). Because we conclude Austin had notice of the transfer more than one year before she filed suit, we need not address the estoppel argument, which is based on the earlier interrogatory response. TEX. R. APP. P. 47.1.

(2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or

(3) under Section 24.006(b) of this code, within one year after the transfer was made.

BUS. & COM. § 24.010(a). Section 24.010(a) is a statute of repose rather than a statute of limitations. *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013) (per curiam). Unlike statutes of limitations, which encourage diligence on the part of plaintiffs, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability. *Id*. at 873, 875 (quoting *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) (internal citations omitted)). Statutes of repose are absolute in nature and, while they may work inequitable hardship in some cases, the "Legislature has balanced this hardship against the benefits of the certainty that a statute of repose provides by extinguishing claims upon a specific deadline." *Id*. at 876.

All of Austin's fraudulent transfer claims were brought more than four years after the transfer. Only Austin's claim based on an actual intent to hinder, delay, or defraud is subject to a discovery rule. BUS. & COM. § 24.010(a)(1). Under that section, Austin was required to bring her cause of action within one year after she discovered or reasonably could have discovered the transfer. *Id*.

Mitchell argues that Austin knew or should have known of the transfer by October 29, 2012 because he disclosed the change in ownership to Austin's attorney,

Lawhorn, during his deposition. Austin asserts she did not discover the transfer until June 5, 2017, shortly before she filed suit. She testified she did not learn about Mitchell's 2012 deposition testimony before 2017. She argues that Lawhorn's divided loyalty at the time of the deposition precludes imputation of his knowledge to her.

Like other agents, an attorney's knowledge acquired during his or her representation of a client is imputed to the client. *McMahan v. Greenwood*, 108 S.W.3d 467, 480–81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). However, an agent's knowledge is not imputed to the principal if the agent has a personal adverse interest in not revealing it. *See Goldstein v. Union Nat'l Bank*, 213 S.W. 584, 590–91 (Tex. 1919); *Arabesque Studios, Inc. v. Acad. of Fine Arts, Intern., Inc.*, 529 S.W.2d 564, 568 (Tex. Civ. App.—Dallas 1975, no writ). This adverse-interest exception is a narrow one; the agent's interests must be "so incompatible with the interests of his principal as practically to destroy the agency or to render it reasonably probable" that the agent will not act on his acquired knowledge nor disclose it to his principal. *Goldstein*, 213 S.W. at 590–91. The test is not whether the agent has some slight adverse interest. *Id.*

As summary judgment evidence, Austin relies on her declaration and an invoice from Lawhorn dated December 19, 2012. Austin stated she hired Lawhorn based on her third husband's confidence in him but had to sign a waiver of conflicts

of interest from his representation of her third husband. By October 2012, however, Austin was in divorce proceedings with her third husband and "Lawhorn ceased representing me shortly after that."

Austin stated she never received the invoice, but that the information in the invoice and her knowledge of the circumstances in October 2012 "leads me to conclude that Lawhorn acted adverse to my interest due to his allegiance to my third husband." She also stated, "There is no doubt that Lawhorn had divided loyalty; otherwise, I would not have had to sign a waiver for him to represent me." Austin next points to time entries on the invoice for communications between Lawhorn and her third husband and his attorney. The entries indicate Lawhorn communicated with her husband and his attorney about not being a witness for Mitchell, their position on a deposition, conflicts of interest, and a waiver. Austin states Lawhorn did not disclose these communications to her at the time and suggested his reason was because he knew "how inappropriate" she would consider Lawhorn's coordinating with her third husband.

After Mitchell's deposition, there is a time entry for a status letter to Austin regarding issues in Mitchell's deposition. Austin stated she never received this letter from Lawhorn. She also stated the invoice was addressed to her former address with her third husband. She asserted that Lawhorn knew she was not living there at the time and would have known her husband was not forwarding her mail.

Austin asserts it is reasonable to infer from this evidence that Lawhorn's actions show he had an adverse interest to Austin. We cannot agree.

Although we do not have the terms of the waiver Austin signed to engage Lawhorn, waivers of conflicts of interest are common in attorney-client relationships and do not establish an adverse interest between the attorney and the client. And while Austin refers to Lawhorn's divided loyalty, that is not the test for the adverse interest exception to the imputation of knowledge. *See Goldstein*, 213 S.W. at 590–91 (noting test is not whether there is "some slight adverse interest"). Neither Austin's waiver of a conflict of interest at some unknown time before the deposition nor Lawhorn's withdrawal at some unknown time after the deposition is evidence of an adverse interest 'so incompatible" with Austin's at the time of the deposition as to destroy the attorney-client relationship. *See id.*

Austin does not describe what actions Lawhorn took that were adverse to her or that showed he had a personal interest in not disclosing Mitchell's deposition to her. There is no evidence that the allegedly undisclosed communications with her husband were adverse to her. It is equally reasonable to infer that these were normal communications an attorney would engage in while representing his client. And they may not have been discussed with Austin because they were routine or resulted in no new information. Further, if Lawhorn intended to hide his contact with her third husband, he would not have included those contacts in an invoice addressed to

Austin. It is not possible to draw any reasonable inference from this meager evidence.

In addition, Austin does not deny other communications between her and Lawhorn reflected in the invoice. These communications were about arbitration issues, her deposition, upcoming depositions, and settlement. The invoice shows Lawhorn conferred with Austin for "input on questions to ask Michael Mitchell during his deposition." Austin did not deny these communications in her declaration. To infer that Lawhorn had an adverse interest in not disclosing the deposition when he asked Austin for input on questions to ask at that deposition is not reasonable.

Nor does Austin's testimony about addressing the invoice to her former address allow a reasonable inference that Lawhorn had an adverse interest to Austin. Sending the invoice to Austin's former address could reasonably have been a simple office error of not updating the billing address or Austin could have failed to provide Lawhorn with her new address.

Several equally probably inferences arise from the facts cited in Austin's declaration. While we indulge inferences of favor of the nonmovant, the inferences must be reasonable. *See Valence Operating Co.*, 164 S.W.3d at 661 (noting courts "indulge every *reasonable* inference" in nonmovant's favor). An inference is not reasonable, however, if it is premised on mere suspicion—"some suspicion linked to other suspicion produces only more suspicion, which is not the same as some

–11–

evidence." *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015) (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 (Tex. 2002))). An inference is not reasonable if it is susceptible to multiple, equally probable inferences, requiring the factfinder to guess to reach a conclusion. *Id*. The inferences Austin asks us to draw from the summary judgment evidence are not reasonable.

Further, Austin's speculations and conclusory assertions do not raise a genuine issue of material fact that her attorney had a personal adverse interest to her interests at the time of the deposition. See TEX. R. CIV. P. 166a(c); *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011) (evidence that does no more than create a mere surmise or suspicion and is so slight as to make any inference a guess is no evidence). Affidavits consisting only of conclusions are insufficient to raise an issue of fact. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). When summary judgment evidence raises only a mere suspicion or surmise of a fact in issue, no genuine issue of material fact exists to defeat summary judgment. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.).

Because Austin failed to raise a genuine issue of fact that her lawyer was so conflicted and acting against her interests at the time of the deposition, her attorney's knowledge is imputed to Austin. Thus, Austin was on notice of the transfer more than four years before she filed suit. We conclude the summary judgment evidence

establishes Austin's fraudulent transfer claim is barred by section 24.010's statute of repose. We overrule Austin's second and third issues.

## B. Standing

Austin argues in her first issue that she has standing to bring disgorgement and accounting claims against the trustee.[4] Mitchell and the trustee moved for summary judgment on the ground that Austin was not an interested person as required by the property code.

The property code provides that an "interested person" may bring an action against a trustee for an accounting and to make determinations of fact affecting a trust, including determinations regarding trust administration and distributions. TEX. PROP. CODE §§ 115.011, 115.001. An "interested person" is:

> [A] trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding.

PROP. § 111.004(7).

Initially, Austin contends the mere fact that she filed a claim against the trustee grants her standing as a person having a "claim against the trust." *Id*. However,

---

[4] Disgorgement is not a cause of action, but an equitable remedy applied to breaches of fiduciary duty. *See Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.). Austin did not allege a breach of fiduciary duty claim against the trustee in her petition. However, Mitchell and the trustee did not raise this argument in the motion for summary judgment.

whether a person is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in the proceeding. *Id*. The mere fact that a person has filed a suit against a trustee cannot confer standing on that person; otherwise, the requirements of section 111.004(7) would be meaningless, and trustees would be forced to defend any suit filed by any person. Instead, we determine whether a person who is not a trustee or beneficiary of a trust is an interested person by looking to the particular purposes of the trust at issue and the matter involved in the proceeding. *Id*.

Austin argues she has an interest in the trust because the initial funding of the trust in 2008 was done before their divorce was final and those funds were presumed to be community property. Mitchell presented summary judgment evidence, however, showing that the trust was not formed and funded until after he and Austin agreed to the division of the marital estate in the settlement agreement. Pursuant to the settlement agreement, Mitchell was awarded all accounts in his sole name. Mitchell produced evidence that the $7,500 used to fund the trust in 2008 was drawn from an account in his sole name. Mitchell's summary judgment evidence shows he made no other transfers to the trust during the marriage.

The only other contribution Mitchell made to the trust was the transfer of a portion of his limited partnership interest in the FLP. Mitchell was awarded Austin's entire interest in the FLP in the divorce decrees. The transfer of the partnership

interest to the trust occurred after the parties were divorced. Thus, that transfer did not involve marital assets.

Absent her fraudulent transfer claim against Mitchell, Austin has no claim against the trustee. She did not allege and there is no evidence that the trustee owed any duty to Austin. Any claim she has is through claims against Mitchell, and the only claim alleged was fraudulent transfer, but that claim is extinguished by the statute of repose. Thus, she does not have a "claim against the trust." PROP. § 111.004(7).

Mitchell testified in his affidavit that he does not control the trust and has never used its accounts for his personal expenses. Mitchell created the irrevocable trust for the benefit of his children; its purpose is to provide for the health, education, maintenance, and support of the beneficiaries. Austin is not a beneficiary or trustee of the trust. She is not named as a contingent beneficiary and the trust document expressly excludes her from becoming a successor trustee.

Considering the purpose of the trust and the matter involved in this proceeding, Austin is not an interested person and does not have standing to bring her claims against the trustee. We overrule Austin's first issue.

## C. Release

In her fourth issue, Austin argues the original divorce decree did not release the claims presented here because the release language was not included in the

amended divorce decree. Because our resolution of other issues is sufficient to affirm the trial court's judgment, this issue is not necessary to the resolution of the appeal. TEX. R. APP. P. 47.1. Therefore, we do not address the fourth issue.

### Conclusion

We affirm the trial court's judgment.

/Erin A. Nowell//

ERIN A. NOWELL
JUSTICE

191359f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

HELEN CULLEN AUSTIN,
Appellant

No. 05-19-01359-CV      V.

MICHAEL W. MITCHELL,
INDIVIDUALLY, AND DANIEL
MITCHELL, AS TRUSTEE OF
THE BRITTANY MITCHELL
TRUST FBO CAITLIN MITCHELL
AND AS TRUSTEE OF THE
BRITTANY MITCHELL TRUST
FBO MEGAN MITCHELL,
Appellees

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-13917.
Opinion delivered by Justice Nowell.
Justices Myers and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Michael W. Mitchell, Individually, and Daniel Mitchell, as Trustee of the Brittany Mitchell Trust FBO Caitlin Mitchell and as Trustee of the Brittany Mitchell Trust FBO Megan Mitchell recover their costs of this appeal from appellant Helen Cullen Austin.

Judgment entered this 8th day of June, 2021.

–17–